733 A.2d 1133

LI FU AND XIAO KANG SU, WIFE & HUSBAND, PLAINTIFFS–
APPELLANTS, AND DANIEL SU, AN INFANT, BY HIS PAR-
ENTS AND NATURAL GUARDIANS, LI FU AND XIAO KANG
SU, AND LI FU AND XIAO KANG SU, INDIVIDUALLY AND
KUIDE CHEN AND MICHELLE CHEN, AN INFANT, BY HER
FATHER AND NATURAL GUARDIAN, KUIDE CHEN AND
KUIDE CHEN, INDIVIDUALLY, PLAINTIFFS, v. HONG FU,
DEFENDANT, AND FREEDOM RIVER INC., D/B/A BUDGET
RENT–A–CAR OF PHILADELPHIA, ITS AGENTS, SERVANTS
AND/OR EMPLOYEES, DEFENDANT–RESPONDENT.

Argued January 4, 1999—Decided July 26, 1999.

*Benjamin N. Cittadino,* argued the cause for appellants (*Devlin, Cittadino & Shaw,* attorneys; *Mr. Cittadino* and *John G. Devlin,* on the brief).

*John M. Palm,* argued the cause for respondent (*Garrigle, Palm and Thomasson,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

The world is composed of territorial states having separate and differing systems of law. Events and transactions occur, and issues arise, that may have a significant relationship to more than one state, making necessary a special body of rules and methods for their ordering and resolution.

[*Restatement (Second) of Conflict of Laws* § 1 (1971).]

The choice-of-law issue before the Court requires us to decide which of the two involved states, New York or New Jersey, has the most significant relationship to the underlying occurrence, an automobile accident in New York involving only New Jersey residents. The narrow question presented is whether to invoke New Jersey's common law rule that shields an automobile owner from vicarious liability in the absence of an agency or employment relationship, or Section 388 New York Vehicle and Traffic Law, which imposes vicarious liability on automobile owners for the negligence of permissive users.

In resolving that question, we must consider whether a foreign state's interest in compensating a New Jersey plaintiff, combined with its interest in deterring irresponsible lending of automobiles, may outweigh New Jersey's interest in shielding a resident defendant from liability for events occurring in the foreign state and for which that state would hold the defendant liable.

I

The facts of this case are virtually undisputed. On July 18, 1993, plaintiffs Xiao Kang Su and Kuide Chen rented a car in Lawrenceville, New Jersey from defendant Freedom River, Inc. of Philadelphia, doing business as Budget Rent-A-Car (Freedom River). Plaintiffs rented the car for a family trip to Cornell University in Ithaca, New York, to attend an academic seminar, after which they intended to go on, perhaps as far as Wisconsin, for further sightseeing. Su and his wife Li Fu, their child Daniel Su, and Chen and his wife defendant Hong Fu, and their child Michelle Chen, wanted to travel in one car. Although Su and Chen each owned a vehicle, neither car was large enough to comfortably accommodate six people on a long drive.

The rental contract identified Su and Chen as the individuals who would be driving the vehicle; however, the Freedom River agent assured the men that their wives were also permitted to drive the car. Chen, in particular, was concerned and sought the agent's assurance that the wives could drive because his friend Su was a poor driver who had been involved in three previous accidents. The rental agent assured Su and Chen that there was "no problem" and that the wives could drive. The agent offered Su and Chen extra property damage insurance, which they declined. The contract called for the car to be returned to Lawrenceville on July 27, 1993.

On July 19, 1993, having concluded an overnight visit to Cornell and while in transit to the Midwest, the group was involved in a one-car accident while passing through Hamburg, New York. Chen's wife, Hong Fu, was driving. According to the accident

report, Hong Fu's view became distorted when it began to rain and Hong Fu, due to her unfamiliarity with the vehicle, could not locate the windshield wiper. As Hong Fu felt the vehicle beginning to leave the pavement and veer onto the left shoulder, she over-corrected to the right, crossed both lanes of traffic, rolled over once and struck an earthen embankment. All five passengers were severely injured and all were conveyed to area hospitals in the Hamburg vicinity. Chen and his daughter Michelle were released after receiving emergency room treatment. The other passengers were admitted for varying lengths of time in New York hospitals: Su remained hospitalized for eight days; Su's son Daniel for three days; and Su's wife Li Fu, who suffered the most serious injuries, remained in a New York hospital for thirty days.

The plaintiffs received personal injury protection through their personal insurance policies, but the amount available was insufficient to provide for all the injured claimants, particularly for Li Fu, the most seriously injured of the passengers. As a result of the accident, Li Fu suffered a severe traumatic brain injury. Li Fu was comatose upon her hospital admission and remained in a coma until August 1993. She continued to receive inpatient medical care through April 1994. She was unable to walk and suffered from impaired memory and cognitive functioning. For instance, despite having worked for ten years as a cardiologist in China, Li Fu could not recall the college she had gone to or the details of her medical training.

Following her discharge from the hospital in April 1994, Li Fu continued a course of outpatient treatment including occupational therapy three to five times a week, treatment with Ritalin to arouse cognitive function, and multiple nerve blocks to correct "a severely spastic gait." A progress report dated June 12, 1995, indicated that Li Fu continued to make slow progress but that "it is unlikely that the patient will ever become independent." Li Fu continues to require constant assistance with daily living and, although she is now able to ambulate with the aid of a cane, for the most part, she remains wheelchair bound.

Due to the severity of her injuries, Li Fu's $250,000 personal injury protection cap has long since been exhausted. She incurred medical expenses in excess of $150,000 in connection with her initial hospitalization alone and her total medical expenses to date are nearly $400,000, and continuing.

Freedom River, a Delaware corporation with its principal place of business in Philadelphia, is a sub-franchisee of Freedom River, Inc., a Delaware corporation with its principal place of business in Lisle, Illinois. Freedom River maintains offices in both Philadelphia, Pennsylvania, and Lawrenceville, New Jersey. The rental vehicle was registered in Pennsylvania. The driver, defendant Hong Fu, and all five passenger-plaintiffs are residents of New Jersey.

In July 1994, all the injured passengers filed a complaint for damages against the driver, Hong Fu, and the owner, Freedom River. In May 1997, all five plaintiffs' claims were arbitrated pursuant to *Rule* 4:21A–1, at which time Chen was awarded $15,000, Chen's daughter Michelle was awarded $7500, Su was awarded $100,000, Su's son Daniel was awarded $25,000 and Su's wife Li Fu was awarded $3,750,000. The arbitrators, as part of their award, found that Section 388 of the New York Vehicle and Traffic Law (Section 388) was the appropriate choice of law, and held Freedom River vicariously liable for the negligence of the driver, Hong Fu.

Because the award to Li Fu exceeded the individual $100,000 limit of the $100,000/$300,000 split limit coverage afforded Hong Fu through her personal policy with the Market Transition Facility (MTF), defendant Hong Fu moved for a trial *de novo* pursuant to *Rule* 4:21A–6(b)(1). Eventually, all plaintiffs except Li Fu agreed to settle with Hong Fu and their agreements were reduced to judgment. Thus, only Li Fu's claim and Su's derivative claim for loss of consortium remain outstanding. MTF, on behalf of its insured, Hong Fu, has offered its individual policy limit of $100,-000 in settlement of Li Fu's claim. That offer has not been accepted. In August 1997, the trial court entered an order

allowing MTF to deposit its policy with the court pursuant to *Rule* 4:57–1.

In April 1997, Freedom River moved for summary judgment on the basis of New Jersey common law, which holds that the owner of a motor vehicle is not liable for the negligence of the vehicle's operator unless the operator is acting as the owner's agent or employee. Plaintiffs opposed the motion, contending that the matter was controlled by Section 388 of the New York Vehicle and Traffic Law. Section 388 imposes vicarious liability on a vehicle's owner for the negligence of the vehicle's operator:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, expressed or implied, of such owner.
>
> [N.Y.Vehicle and Traffic Law § 388(1) (McKinney 1996).]

The trial court initially granted Freedom River's motion, concluding that all of the significant relationships in this case were with New Jersey and that it was a "happenstance" that the accident occurred in New York. After hearing additional oral arguments on plaintiffs' motion for reconsideration, the trial court reversed its initial ruling, vacated the summary judgment granted in favor of Freedom River, and ordered that the matter proceed in accordance with New York law. The trial court then certified its judgment as final pursuant to *Rule* 4:42–2, allowing Freedom River to appeal as of right.

The Appellate Division reversed and held that New Jersey law applied. 309 *N.J.Super.* 435, 442–43, 707 *A.*2d 473 (App.Div.1998). We granted plaintiffs' motion for leave to appeal.

## II

■ The issue before the Court is whether to apply New Jersey's common-law vicarious liability rule or Section 388 of the New York Vehicle and Traffic Law. Because New Jersey is the forum state, the issue must be determined in accordance with this State's choice-of-law rules. *Gantes v. Kason Corp.*, 145 *N.J.* 478,

484, 679 *A*.2d 106 (1996). In tort cases, New Jersey has rejected the traditional rule of *lex loci delicti*, pursuant to which the local law of the place where the wrong occurred governed all substantive issues. *Veazey v. Doremus*, 103 *N.J*. 244, 247, 510 *A*.2d 1187 (1986). Instead, we now apply a more flexible "governmental-interest" test that seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation. *Id.* at 247–48, 510 *A*.2d 1187; *Gantes, supra*, 145 *N.J*. at 484, 679 *A*.2d 106.

## A

The first prong of the governmental-interest analysis requires a determination that an actual conflict exists between the laws of New York and New Jersey. *Gantes, supra*, 145 *N.J*. at 484, 679 *A*.2d 106. That inquiry is conducted on an issue-by-issue basis. *Ibid.* Indisputably, the two states' laws governing the issue to be resolved in this case—whether an automobile owner is vicariously liable for negligent permissive use of that owner's vehicle—are fundamentally different. New Jersey adheres to the common-law rule that the owner of a motor vehicle is not liable for the negligence of a permissive user unless the driver is acting as the owner's agent or employee. *Haggerty v. Cedeno*, 279 *N.J.Super.* 607, 609, 653 *A*.2d 1166 (App.Div.), *certif. denied*, 141 *N.J*. 98, 660 *A*.2d 1197 (1995); *Doran v. Thomsen*, 76 *N.J.L.* 754, 71 *A*. 296 (E. & A.1908); *Maurer v. Brown*, 106 *N.J.L.* 284, 149 *A*. 336 (Sup.Ct.1930). That plaintiffs' action against Freedom River is precluded by virtue of an owner's immunity for vicarious liability under New Jersey law is not contested.

New York, in contrast, has by statute abrogated the common law in its enactment of Section 388 of the Vehicle and Traffic Law, which imposes liability on an automobile owner for injuries resulting from a permissive driver's negligent use or operation of that owner's car. Under that rule, Freedom River's liability would be co-extensive with that of the driver, Hong Fu.

## B

The second prong of the governmental-interest analysis requires the Court to determine which state has the most significant relationship to the occurrence and the parties with respect to the issue of vicarious liability. *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187. In doing so, we must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Ibid.* The relevant factors set forth in sections 6, 145 and 174 of the *Restatement (Second) of Conflict of Laws* (1971) guide our evaluation of the governmental interests at stake.

### 1.

■ New York has a well-articulated, two-fold policy underlying Section 388. First, the statute was designed to "ensure access by injured persons to a financially responsible insured person against whom to recover for injuries." *Morris v. Snappy Car Rental, Inc.,* 84 *N.Y.*2d 21, 614 *N.Y.S.*2d 362, 637 *N.E.*2d 253, 255 (1994) (internal quotations omitted). Section 388 achieves that compensatory purpose by "remov[ing] the hardship which the common-law rule visited upon innocent persons by preventing an owner from escaping liability" because of the lack of an employment or agency relationship with the driver. *Ibid.* Although New York's compensatory purpose is especially strong when the victim is a New Yorker, see *Aboud v. Budget Rent A Car Corp.,* 29 *F.Supp.*2d 178, 182 (S.D.N.Y.1998), the "innocent victim class has not been limited to New Yorkers." *Haggerty, supra,* 279 *N.J.Super.* at 610, 653 *A.*2d 1166 (quoting *Klippel v. U–Haul Co.,* 759 *F.*2d 1176, 1180 (4th Cir.1985)). When the accident occurs in New York, the compensation of the victim serves a related governmental interest in "assuring that New York vendors who furnish medical and hospital care to injured parties are compensated." *Bray v. Cox,* 39 *A.D.*2d 299, 333 *N.Y.S.*2d 783, 785 (1972).

In enacting Section 388 New York also intended to regulate the conduct of automobile owners by "discourag[ing] owners from lending their vehicles to incompetent or irresponsible drivers."

*Haggerty, supra,* 279 *N.J.Super.* at 609, 653 *A.*2d 1166 (quoting *Report of the New York Law Revision Commission* at 593 (1958)). We note that despite Section 388's explicitly stated purpose to deter irresponsible lending, the Appellate Division characterized Section 388 solely as a loss-allocating rule because it "does not purport to regulate the conduct of the operator on the road." 309 *N.J.Super.* at 441–42, 707 *A.*2d 473 (citing *Buglioli v. Enterprise Rent–A–Car,* 811 *F.Supp.* 105, 108 (E.D.N.Y.), *aff'd,* 999 *F.*2d 536 (2d Cir.1993)). At the same time, that court acknowledged that Section 388 was intended to operate "as an incentive to lessors of motor vehicles to lease only to competent individuals." 309 *N.J.Super.* at 442, 707 *A.*2d 473. That deterrent policy has been construed by New York as having particular application to car rental agencies, "who clearly make no investigation of the capacity or sense of responsibility of the lessee other than the production of the driver's license." *Platt v. Hertz Corp.,* 64 *Misc.*2d 752, 315 *N.Y.S.*2d 780, 784 (Civ.Ct.1970), *rev'd on other grounds,* 66 *Misc.*2d 505, 321 *N.Y.S.*2d 613 (Sup.App.Term 1971).

The policy supporting New Jersey's common-law vicarious liability law was described in *Haggerty, supra,* 279 *N.J.Super.* at 611–12, 653 *A.*2d 1166:

> New Jersey's common law rule regarding owner liability is not designed to protect the injured party ... or to protect the driver. It is designed to shield an owner from liability in cases in which the owner has not been negligent and in which the culpable driver is not related to the owner in a way that will justify the imposition of vicarious liability under traditional principles of the law of agency or master servant. That shield is consistent with the principle that tort liability in the context of automobile-related personal injuries is based on fault.

New Jersey's rule serves neither a deterrent nor a compensatory purpose. Rather, it simply adheres to the well-established, common-law principle that liability for automobile negligence should be allocated solely on the basis of fault.

■ Plaintiffs suggest that New York's law, because it exists by affirmative legislation, demonstrates a stronger policy than does New Jersey's law, which continues only by legislative default. That New Jersey's common-law vicarious liability law exists without implementing legislation does not, in itself, dilute the impor-

tance of the law's underlying goals. See *Restatement, supra,* § 6(2) comment e (noting that in resolving a conflict of laws courts consider purpose of each state's local law "whether embodied in a statute or a common law rule").

Where, however, the purpose of a longstanding common-law rule appears to be at odds with the aim of more recent affirmative acts by the legislature governing the same field of law, it may be reasonable to conclude that the historical rule has lost some of its vitality as a statement of public policy. In the field of automobile negligence law, this State's method of allocating liability has shifted in recent years from a purely fault-based system, whereby compensation for injuries is obtained through tort remedies and/or third party insurance, toward a system of first-party coverage. Specifically, the no-fault insurance law has partially removed the fault system from New Jersey's automobile negligence law by requiring every automobile insurance policy issued in this state to provide "for the payment of [medical] benefits without regard to negligence, liability or fault of any kind," *N.J.S.A.* 39:6A–4, to the named insured, family members, and other persons injured as a result of an automobile accident. *See also Newcomb Hosp. v. Fountain,* 141 *N.J.Super.* 291, 294, 357 *A.*2d 836 (Law Div.1976) (" 'No fault' legislation was designed to partially remove the fault system from automobile negligence law.").

In addition, *N.J.S.A.* 39:6B–1, the mandatory insurance law, requires this State's individual automobile owners to carry insurance coverage consistent with requirements imposed by the Commissioner of Insurance that includes the obligation to provide coverage for liability arising out of the permissive use of their vehicles. That requirement obviously reflects a legislative purpose to ameliorate the effect of New Jersey's common-law rule against vicarious liability by requiring car owners to pay the cost of liability coverage for permissive users to assure that compensation is available for their injured victims. Insofar as *N.J.S.A.* 39:6B–1 aims to effectuate the overriding legislative policy of assuring financial protection for the innocent victims of motor

vehicle accidents, in part by requiring coverage for injuries arising out of permissive automobile use, that policy would appear to be congruent with New York's direct imposition of vicarious liability on automobile owners arising out of the negligent permissive use of their vehicles.

2.

With each state's domestic policies in mind, we must next consider "whether those concerns will be furthered by applying that law to the multi-state situation." *Pfizer, Inc. v. Employers Ins. of Wausau,* 154 *N.J.* 187, 198, 712 *A.*2d 634 (1998). Section 6 of the *Restatement* identifies the general considerations germane to our governmental-interest analysis:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

[*Restatement, supra,* § 6; *see also Gilbert Spruance v. Pennsylvania Manufacturers' Ass'n,* 134 *N.J.* 96, 103, 629 *A.*2d 885 (1993).]

For purposes of an issue arising out of tort law, those factors may be grouped into five categories of interests: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states. See *Restatement, supra,* § 145 comment b; *cf. Pfizer, supra,* 154 *N.J.* at 197–98, 712 *A.*2d 634 (adopting similar grouping of interests for purposes of issue in contract).

(1) *The interests of interstate comity* require courts to consider whether application of a competing state's law would frustrate the policies of other interested states. *Restatement, supra,* § 145(1) comment b. "If a strong state policy or interest will be neither fostered by applying that state's law, nor frustrated by the failure to apply it, it is highly unlikely that that state has

any interest whatsoever in blanketing that particular issue with its law." *White v. Smith,* 398 *F.Supp.* 130, 134 (D.N.J.1975).

◼ (2) *The interests underlying the field of tort law* require courts to consider the degree to which deterrence and compensation, the fundamental goals of tort law, would be furthered by the application of a state's local law. *Restatement, supra,* § 145 comment c. When the tort rule primarily serves a deterrent purpose, the state where the harmful conduct took place will likely have the dominant interest with respect to that rule. *Ibid.* When the tort rule is designed primarily to compensate a victim for his or her injuries, the state where the injury occurred, which is often where the plaintiff resides, may have the greater interest in the matter. *Ibid.* Because every tort rule, to some extent, is designed both to deter and to compensate, it is necessary to evaluate on a case-by-case basis the relative weight of those underlying purposes with respect to a specific rule. *Ibid.*

◼ Rules such as New Jersey's that deny liability are entitled to equal consideration in choice-of-law determinations as are rules imposing liability, although discerning the underlying purpose of a liability-denying rule often is difficult. *Ibid.* At a minimum, when a defendant has justifiably relied on the shelter afforded by New Jersey law, this state does have "a substantial interest in shielding car owners from such unforeseeable liability." *Aboud, supra,* 29 *F.Supp.*2d at 182.

◼ (3) *The interests of parties* "require courts to focus on their justified expectations and their needs for predictability of result." *Pfizer, supra,* 154 *N.J.* at 199, 712 *A.*2d 634. The protection of the parties' justified expectations, a factor of extreme importance in the field of contracts, ordinarily plays little or no part in a choice-of-law question in the field of torts. *Restatement, supra,* § 145 comment b. That is so because persons who cause unintentional injury "usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct." *Ibid.*

Commercial lessors such as defendant Freedom River, however, unlike individual car owners, evaluate their potential liability under the laws of the various states in which they operate, and purchase insurance in anticipation of any identified risks. Freedom River argues that it justifiably relied on *N.J.S.A.* 45:21–1 to – 3, the mandatory insurance law applicable to car rental agencies, in assessing its potential exposure to vicarious liability under New Jersey law. That law requires commercial bailors to purchase and provide proof of insurance with a policy limit of $10,000/$20,000 for bodily injury or death, and $5000 for property damage. *N.J.S.A.* 45:21–2 and –3. The purpose of the policy is to "insur[e] such owner against loss from the liability imposed by law upon such owner for damages ... arising out of the negligent maintenance, use or operation" of the owner's vehicle. *General Accident Group of Ins. Co. v. Liberty Mut. Ins. Co.*, 191 *N.J.Super.* 530, 534, 468 *A.*2d 430 (App.Div.1983). Because the mandatory insurance law does not abrogate the owner's common-law immunity from vicarious liability for permissive use, see *Schimek v. Gibb Truck Rental Agency*, 69 *N.J.Super.* 590, 592, 174 *A.*2d 641 (App.Div.1961), Freedom River contends that it reasonably relied on the statute as defining the outer limits of its liability exposure, at least in a rental transaction with a New Jersey lessee. Nevertheless, the record reveals that in addition to providing statutorily required liability coverage for plaintiffs in the minimum amount of $20,000 for a single accident, Freedom River also carried a policy to cover its personal liability in the amount of up to $500,000 for a single accident, as well as an excess policy with coverage up to $2,000,000.

 (4) *The interests of judicial administration* require the courts to consider the relative ease in determination and application of the choice of law regarding a specific issue, a factor that in turn furthers the values of uniformity and predictability of result. See *Restatement, supra,* § 145 comment b. Those considerations, however, are of lesser importance and must yield to a strong state interest implicated by the remaining factors. *Ibid.*

■ *(5) The competing interests of the states,* the most significant factor in the tort field, requires

> courts to consider whether application of a competing state's law under the circumstances of the case "will advance the policies that the law was intended to promote." The "law" can be either the decisional or statutory law of a state. Thus, the initial focus should be on "what [policies] the legislature or court intended to protect by having that law apply to wholly domestic concerns, and then, whether those concerns will be furthered by applying that law to the multi-state situation." This is another way of saying that "[i]f a state's contacts [with the transaction] are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply."
>
> [*Pfizer, supra,* 154 *N.J.* at 198, 712 *A.*2d 634 (citations omitted) (brackets in original).]

Section 145(2) of the *Restatement* specifies the contacts that are most significant to that analysis: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. Those contacts are "considered, however, only to the extent that they are relevant to the purposes of the particular laws in conflict." *White, supra,* 398 *F.Supp.* at 134.

New York's sole contact with this controversy is as the place of the accident. That New York has numerically fewer contacts with the transaction than does New Jersey is not dispositive, because it is the qualitative, not the quantitative, nature of that state's contacts that ultimately determines whether its law should apply. *Pfizer, supra,* 154 *N.J.* at 198, 712 *A.*2d 634; *see also White, supra,* 398 *F.Supp.* at 134 (noting that applying local law of state with numerically greatest contacts would be as mechanical and unjust as automatic application of *lex loci delicti* rule).

■ In personal injury cases, "the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law." *Restatement, supra,* § 145 comment e. When both conduct and injury occur in a single jurisdiction, with only "rare exceptions, the local

law of the state where conduct and injury occurred will be applied" to determine an actor's liability. *Id.* § 145 comment d. That is so because "a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." *Ibid.* The place of injury becomes less important where it is simply fortuitous. *Ibid.*

"[I]f a state's contacts [with the transaction] are not related to the policies underlying its law, then that state does not possess an interest in having its law apply." *Pfizer, supra,* 154 *N.J.* at 198, 712 *A.*2d 634 (quoting *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187). In this case, the Appellate Division found that New York had no interest in this transaction because that state's contact as the place of the accident was unrelated to the policy underlying its vicarious liability law. Specifically, relying on *Haggerty, supra,* 279 *N.J.Super.* 607, 653 *A.*2d 1166, the court below found that New York intended its law to apply only to New York owners and New York-licensed drivers.

In *Haggerty, supra,* the Appellate Division held that the Dollar car rental agency was liable under Section 388 to a New Jersey resident injured after being struck in Elizabeth, New Jersey, by a Dollar-owned automobile that had been rented by a Florida resident at Newark Airport. *Haggerty, supra,* 279 *N.J.Super.* at 609, 653 *A.*2d 1166. The court placed great emphasis on New York's contacts as the agency's principal place of business and as the state of the vehicle's registration. *Id.* at 612, 653 *A.*2d 1166. The court noted that "New York has determined that its vehicle owners shall be liable for the negligence of persons operating their automobiles," and that New York "occupies a unique and critical position for the regulation of the owner's legal obligations arising out of the ownership and use of the vehicle." *Ibid.*

Specifically, the court in *Haggerty* found it fair to hold Dollar liable because New York residents are required to purchase insurance to cover permissive use of their vehicles, and are therefore on notice regarding their potential exposure to vicarious liability. *Ibid.; see also Fried v. Seippel,* 80 *N.Y.*2d 32, 587

*N.Y.S.*2d 247, 599 *N.E.*2d 651, 655 (1992) (noting "linkage of an owner's vicarious liability to an owner's obligation to maintain adequate insurance coverage" in New York suggests that legislature intended to ensure that owners of vehicles subject to regulation in New York "act responsibly"). Thus, *Haggerty* held that the New York registration of the vehicle and the owner's residing principally in New York for business purposes provided an adequate connection between the vehicle, its owner and the state of New York to invoke New York law. *Id.* at 612, 653 *A.*2d 1166; *cf. Butkera v. Hudson River Sloop "Clearwater," Inc.*, 300 *N.J.Super.* 550, 555, 693 *A.*2d 520 (App.Div.1997) (noting that defendant that had incorporated under New York law after charitable immunity was abrogated did so "with full knowledge and acceptance of the tort consequences flowing from its negligent actions"). Citing *Haggerty*, the Appellate Division in this case found that in the absence of a similar connection, New York law should not be invoked.

Section 174 of the *Restatement* provides specific guidance on whether another state's vicarious liability law should apply. That section requires a court to determine whether there is a reasonable relationship between the defendant and the state whose local law is to be applied. *Restatement, supra,* § 174 comment a. Generally, a reasonable relationship between the state where the conduct and injury occurred and a person sought to be held vicariously liable may be found where that person instructed or authorized the tortfeasor to enter the state, or even if it was reasonably foreseeable that the tortfeasor would enter the state. *Id.* § 174 comment c; *cf. Bedwell & Sons v. Geppert Bros.*, 280 *N.J.Super.* 391, 396, 655 *A.*2d 483 (App.Div.) (applying New Jersey law to indemnification action where both parties were Pennsylvania corporations in view of New Jersey's compelling interest in determining availability of funds for hazardous waste cleanup within its border and foreseeability of Pennsylvania's waste materials coming to rest in New Jersey), *certif. granted,* 142 *N.J.* 451, 663 *A.*2d 1358 (1995), *appeal dismissed,* 143 *N.J.* 481, 672 *A.*2d 1165 (1996). Here, Freedom River knew of plaintiffs' itinerary

and specifically authorized plaintiffs to drive the vehicle to New York, plaintiffs' intended destination.

Of course, when the underlying conduct and injury do not occur in the state whose law would impose vicarious liability, some other "connection" must be found to establish "a reasonable relationship between the defendant and the state whose local law is to be applied." *Restatement, supra,* § 174 comment a. In cases involving accidents outside New York, an owner's status as a New York resident or the vehicle's New York registration have frequently been cited as establishing an adequate tie to hold an owner vicariously liable under New York law. See *McKinney v. S & S Trucking, Inc.,* 885 *F.Supp.* 105 (D.N.J.1995) (holding New York law applied to permit recovery by New Jersey plaintiff injured in New Jersey accident after being struck by New York-registered rental vehicle that was owned by corporation with primary business situs in New York); *White, supra,* 398 *F.Supp.* 130 (holding New York law applied to permit recovery by Pennsylvania plaintiffs injured in New Jersey accident, after being struck by New York-registered vehicle that was operated by Michigan resident and owned by corporation with primary business situs in New York); *Haggerty, supra,* 279 *N.J.Super.* 607, 653 *A.2d* 1166 (holding New York law applied to afford remedy to New Jersey resident struck in New Jersey by automobile registered in New York and operated by Florida resident).

This case does not involve the extraterritorial application of Section 388. Rather, this matter concerns a wholly domestic application of the statute, which on its face regulates accidents arising from the negligent use and operation of a vehicle within the State of New York. In the context of a New York accident, New York courts have unwaveringly applied Section 388, notwithstanding the absence of any additional "contacts" with the transaction. In *Kell v. Henderson,* 47 *Misc.*2d 992, 263 *N.Y.S.*2d 647 (Sup.Ct.1965), *aff'd,* 26 *A.D.*2d 595, 270 *N.Y.S.*2d 552 (1966), the court found that Section 388 applied to a single-car accident in New York in which the vehicle was registered in Ontario, the

parties were all Ontario residents, and the trip originated and was to end in Ontario.

> The law is well established that in the State of New York the owner of a motor vehicle used on New York State highways with permission is liable for damages to a person injured as the result of any negligence by the operator. [Section 388] provides substantially that every owner of a vehicle used or operated in this State shall be liable and responsible for death or injuries to the person or property resulting from negligence in the use or operation of such vehicle in the business of such owner or otherwise by any person using or operating the same with the permission, express or implied, of such owner. This section of the law is not limited to New York State residents, and, consequently, out of state owners and operators who elect to use the highways of our state subject themselves to this statute. The law makes no distinction between residents and non-residents, people in transit or otherwise. The law does not provide for any exceptions. It does not permit defendants in the type of case before the court to plead the defense of a foreign guest statute, which is in direct conflict with one of our statutes governing travel upon our highways in which we have a keen interest.
>
> [<em>Id.</em> at 650–51 (citations omitted).]

In *Bray v. Cox, supra,* a New York appellate court expressly held that New York has strong governmental interests in applying Section 388 to an accident within its borders even when none of the parties is a New York resident:

> Foremost among New York's identifiable interests is supervision over the conduct of drivers using its highways. The civil remedy of damages for the negligent infliction of personal injuries is a sanction used by this state to induce careful driving. Another recognized and accepted interest is in assuring that New York vendors who furnish medical and hospital care to injured parties are compensated. A proper inquiry into governmental interests requires consideration of the fact that in this case and indeed in most similar cases there is the likelihood of the existence of New York vendors. Finally, New York has a public fiscal interest in assuring that indigent non-resident accident victims do not become public charges and that if they do, New York State can recoup its welfare expense from the victim's recovery. In summary, New York's identifiable interests are highway safety, economic protection of New York vendors, and State public fiscal interests.
>
> [<em>Bray, supra,</em> 333 <em>N.Y.S.</em>2d at 785–86 (citations omitted).]

Similarly, in *Himes, supra,* the court held that Section 388 applied and that Pennsylvania's vicarious liability law could not be interposed as a defense where the plaintiff, a Pennsylvania resident, was seriously injured in an accident in the State of New York while she was traveling to her house in Pennsylvania. *Himes, supra,* 416 *N.Y.S.*2d at 987. At the time, Himes was

driving a vehicle that was registered and insured in Pennsylvania. *Ibid.* The vehicle that struck Himes was driven by Harry L. Stalker, Jr., a resident of Pennsylvania. Stalker's vehicle was owned by his parents, also residents of Pennsylvania. The Stalkers' vehicle was registered and insured in the state of Pennsylvania. *Ibid.*

At least one New York court explicitly has held that because an accident in New York arising from negligent permissive use is the very underlying conduct Section 388 is designed to regulate, the statute does not implicate a choice-of-law question for accidents occurring in New York; instead those circumstances simply create a substantive cause of action against an owner by any person injured by the permissive use of that owner's automobile. *Rye v. Kolter,* 39 *A.D.*2d 821, 333 *N.Y.S.*2d 96, 97 (1972).

The foregoing authorities suggest that New York has a strong interest in applying Section 388 to an accident within its borders. Nevertheless, New York's interests in deterrence and compensation must be compared and weighed against any governmental interest that New Jersey has in applying its vicarious liability law based on New Jersey's contacts with the litigation and the parties.

New Jersey's contacts with this matter are several. New Jersey is the forum state, the domicile of the injured plaintiffs, the domicile of the defendant-driver, the place where Freedom River transacts its business, and the place where the underlying rental transaction was executed. Because a choice-of-law analysis does not involve a mere counting of heads, that New Jersey has numerically greater contacts with the transaction than does New York is not a sufficient basis to invoke New Jersey law. Each of this State's contacts must be considered in turn to assess the relation of those contacts, if any, to New Jersey's governmental interests.

New Jersey's status as the forum state is irrelevant to the choice of law. *O'Connor v. Busch Gardens,* 255 *N.J.Super.* 545, 549, 605 *A.*2d 773 (App.Div.1992). Also irrelevant is the fact that,

for its own affairs, New Jersey prefers its rule of vicarious liability, as "it is the forum state's duty to disregard its own substantive preference" regarding the competing rules of law. *Id.* at 550, 605 *A.*2d 773; *see also Restatement, supra,* § 174 comment b (stating that fact that forum state's law would not impose vicarious liability is not decisive if relationship between defendant and other person "affords a fair and reasonable basis for the imposition of such liability").

That the underlying rental transaction, including the execution of the rental contract, occurred in New Jersey also appears to have minimal significance to the issue of vicarious liability. The event giving rise to vicarious liability was not the rental transaction, but the automobile accident, which occurred in New York. Moreover, the contract itself is unrelated to the issue of vicarious liability, as it did not specify a forum state to govern any disputes in the event of an accident. *Cf. Black v. Walker,* 295 *N.J.Super.* 244, 684 *A.*2d 1011 (App.Div.1996) (holding that New York's contact as location where child support agreements were drafted and executed not essential to choice-of-law analysis in dispute over obligation to pay for child's college expenses, as agreements did not address and were therefore not relevant to issue of child's college expenses); *see also Haggerty v. Cedeno,* 267 *N.J.Super.* 114, 121, 630 *A.*2d 848 (Law Div.1993) ("It is not the place where the relationship originates which governs the choice of law, but the state which has the most compelling interest in the application of the law.").

Injured plaintiff Li Fu is a resident of New Jersey. Compensation being one of the underlying purposes of the tort field, New Jersey's compensation interest is implicated whenever the plaintiff is a New Jersey domiciliary. *See Schum v. Bailey,* 578 *F.*2d 493, 496 (3d Cir.1978) (noting that compensation goal reflects underlying governmental interest that injured domiciliary not become charge on society and be restored, if possible, to productivity); *Henry v. Richardson–Merrell, Inc.,* 508 *F.*2d 28, 33 (3d Cir.1975)(noting that primary purpose of tort law is to compensate

plaintiffs for their injuries); *Mellk v. Sarahson,* 49 *N.J.* 226, 229 *A.*2d 625 (1967) (holding New Jersey's strongly declared policy favoring compensation of its domiciliaries for tortious conduct of others, regardless of where that conduct occurs, prevails over Ohio's policy of preventing collusive suits); *Pine v. Eli Lilly & Co.,* 201 *N.J.Super.* 186, 192–93, 492 *A.*2d 1079 (App.Div.1985)(holding New Jersey's interest in compensating its domiciliaries is paramount and outweighs its policy discouraging forum-shopping).

New Jersey's interest in compensation is not related to the issue of Freedom River's vicarious liability, however, because New Jersey's vicarious liability law has no compensatory purpose. Rather, this state would disallow the sought-after recovery. *See Haggerty, supra,* 279 *N.J.Super.* at 612, 653 *A.*2d 1166 ("[I]t would indeed be anomalous to apply foreign law solely to gain access to a deep pocket when local law denies that access."). Moreover, New Jersey has an interest in the uniform application of its law to assure that victims of automobile accidents "are treated fairly and uniformly and that some of those victims not be granted extraordinary rights and preferences." *Aboud, supra,* 29 *F.Supp.*2d at 182 (quoting *Klippel, supra,* 759 *F.*2d at 1182). Accordingly, New Jersey would not invoke New York law solely to afford its injured resident a remedy. Conversely, that New York would afford Li Fu a remedy does not preclude the application of New York law if that state is found to have the dominant interest in this case.

New Jersey is also the residence of the defendant-owner, Freedom River. That contact is directly related to New Jersey's policy of shielding automobile owners from vicarious liability. Plaintiffs argue, however, that New Jersey has a diminished interest in shielding Freedom River from liability by virtue of its status as a non-domiciliary resident corporation. Specifically, Freedom River is a Delaware corporation with its principal place of business in Pennsylvania. *See generally American Employers' Ins. Co. v. Elf Atochem North America, Inc.,* 157 *N.J.* 580, 590–94, 725 *A.*2d 1093 (1999) (noting that corporation is domiciled only in state of its

incorporation and although corporation may be considered resident of several states, for purposes of diversity jurisdiction, a corporation may be considered citizen only of state by which it has been incorporated or in which it has its principal place of business); *State v. Garford Trucking, Inc.*, 4 *N.J.* 346, 351–53, 72 *A.*2d 851 (1950) (noting that corporation is domiciled only in legal jurisdiction of its origin and may not migrate to another jurisdiction, although it may have one or several residences elsewhere for transaction of its business). The domicile, residence, place of incorporation, and place of business of a defendant corporation are relevant, although not dispositive, considerations in a choice-of-law determination. *Restatement, supra*, § 145(2)(c); *cf. Performance Motorcars of Westchester, Inc. v. KPMG Peat Marwick*, 274 *N.J.Super.* 56, 62, 643 *A.*2d 39 (App.Div.) (noting that domicile is but one factor to be considered in the overall qualitative analysis), *certif. denied*, 139 *N.J.* 183, 652 *A.*2d 172 (1994).

In *Haggerty, supra*, 279 *N.J.Super.* at 612, 653 *A.*2d 1166, the Appellate Division found that New Jersey's interest in shielding a defendant-rental agency from vicarious liability was substantially diluted when the defendant, Dollar, was a Delaware corporation with its principal place of business in New York. *See also Greenfeder v. Jarvis*, 302 *N.J.Super.* 153, 161, 694 *A.*2d 1072 (App.Div.1997) (noting that New Jersey has no interest in shielding out-of-state owner or lessor from liability).

In addition, plaintiffs contend that New Jersey's governmental interest is highly attenuated where, as here, the accident occurred in a foreign jurisdiction. In other contexts, this State's courts have readily deferred to the local law of the foreign jurisdiction in which the underlying misconduct and injury occurred. *See Moye v. Palma*, 263 *N.J.Super.* 287, 294–95, 622 *A.*2d 935 (App.Div.1993)(holding that New York, as locus of automobile accident, had greater interest in application of its comparative negligence law to litigation than did New Jersey, as forum state and residence of all parties); *O'Connor, supra*, 255 *N.J.Super.* at 549, 605 *A.*2d 773 (noting that New Jersey's comparative negli-

gence laws do not "follow" New Jersey resident plaintiffs, supplanting local liability laws wherever they go); *Van Slyke v. Worthington*, 265 *N.J.Super.* 603, 614, 628 *A.*2d 386 (Law Div. 1992) (noting that although New Jersey may have interest in affording architects and builders protection of statute of repose for work performed within New Jersey, it has no interest in protecting such activity out of state).

## III

We hold, on balance, that considering the interests of interstate comity, the interests of the parties, the policies of deterrence and compensation, the interest in predictability and uniformity of result, and the competing interests of the states, the relevant factors point toward application of New York law to determine the issue of vicarious liability.

With respect to interstate comity, New Jersey's governmental interests in this matter are the uniform application of its vicarious liability law to New Jersey automobile owners and, relatedly, the protection of those owners' justified expectations in conforming their conduct to this State's laws. We do not find that those "wholly domestic concerns," *Pfizer, supra,* 154 *N.J.* at 198, 712 *A.*2d 634, would be significantly advanced by the application of New Jersey's law to shield a non-domiciliary lessor from liability arising from an accident in another state. See *Greenfeder, supra,* 302 *N.J.Super.* at 161, 694 *A.*2d 1072 (noting that New Jersey has no interest in shielding out-of-state owner or lessor from liability); *Haggerty, supra,* 279 *N.J.Super.* at 612, 653 *A.*2d 1166 (noting New Jersey's diminished interest in shielding non-domiciliary rental agency from vicarious liability); *O'Connor, supra,* 255 *N.J.Super.* at 549–50, 605 *A.*2d 773 (noting that New Jersey's comparative negligence laws do not apply to action by resident plaintiffs for injuries sustained in another state); *Van Slyke, supra,* 265 *N.J.Super.* at 614, 628 *A.*2d 386.

In contrast, both New York's goal of promoting highway safety and its intent to provide compensation for innocent victims injured

on New York highways by permissive users of borrowed, and specifically of rented, vehicles, see *Platt, supra,* 315 *N.Y.S.*2d at 784, would be vindicated if New York's law, rather than New Jersey's, were applied to the issue of vicarious liability. We accord enhanced weight to New York's interest in the application of its law because a car rental company owned the vehicle involved in the accident.

Concerning the interests of the parties, New Jersey's interest in protecting Freedom River's justified expectations also does not favor the application of New Jersey law. We recognize that New Jersey has a substantial interest in protecting the justified expectations of its resident car owners by shielding them from unforeseeable liability. That interest may be diminished, but is not eliminated, when the automobile owner is a non-domiciliary resident corporation doing business in several states. However, to the extent that Freedom River relied on the minimum policy limits and this state's common-law vicarious liability rule to limit its potential tort exposure for events occurring out of state, we find that reliance to have been unreasonable. First, neither under New Jersey nor New York law are the minimum policy limits established by the mandatory insurance laws coextensive with a policyholder's exposure to liability under common-law or statutory causes of action in tort. Beyond this, however reasonable may be a rental agency's reliance on New Jersey's vicarious liability laws for purposes of an accident in this State, any blanket reliance on this State's law as a defense to conduct occurring in a foreign jurisdiction could not be justified. If, for instance, a New Yorker had been injured in this same accident, Section 388 unquestionably would have applied. See *Shafarman v. Ryder Truck Rental,* 100 *F.R.D.* 454 (S.D.N.Y.1984). Thus, given the not unlikely possibility that a car rented from a New Jersey agency for the purpose of traveling to New York might be involved in an accident there, New Jersey car rental agencies reasonably should anticipate potential exposure to liability under New York's motor vehicle laws.

We surmise that Freedom River was not blindsided by its potential liability in New York. Despite its providing statutorily required liability coverage for plaintiffs in the minimum amount of $20,000, Freedom River acknowledges that it also carried a policy to cover its personal liability in the amount of up to $500,000 for a single accident, as well as an excess policy with coverage up to two million dollars. That acquisition of additional insurance protection by Freedom River obviously reflects its informed understanding that a car rental business must anticipate the likelihood that the law of other jurisdictions may affect its liability for injuries caused by accidents involving one of its rental vehicles.

Concerning the interests in judicial administration, the predictability and uniformity of result and the ease in determination and application of the choice of law, we note that those interests might be furthered by adopting a mechanical rule that New Jersey has the paramount interest in applying its law to any controversy involving parties who are all residents of this State. However, in a choice-of-law determination involving the field of tort, the interests in predictability and uniformity are of minimal importance and must yield to the more critical concerns that focus on the governmental policies of the two states.

In considering the extent to which each state's laws further the goals of deterrence and compensation, that factor points to the application of New York's vicarious liability law. Because New York's law has both a deterrent and a compensation objective, those underlying governmental interests outweigh the interests of New Jersey, whose law seeks neither to compensate victims nor to deter irresponsible behavior.

Finally, focusing on the competing interests of the states, we find that New York's underlying goals of compensation and deterrence bear a closer relationship to an accident in that state than does New Jersey's goal of shielding its residents from liability without fault. New York has demonstrated an unwavering policy that "innocent plaintiffs should have a financially responsible source from which to recover ... [and] that automobile ownership

*per se* carries a heavy burden of responsibility." *White, supra,* 398 *F.Supp.* at 137. New York's governmental interests are compelling in this instance because both the conduct giving rise to liability and the injury occurred in that state. *Restatement, supra,* § 145(1) comment d. New York "has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." *Ibid.* New York's interests in highway safety and the compensation of New York health care providers are directly related to its contacts with this accident, as a result of which plaintiff Li Fu alone incurred medical expenses exceeding $150,000 during her New York hospital stay.

In this factual setting, we reject the characterization of the parties' contacts with New York as "fortuitous." In a broad sense, the *occurrence* of any automobile accident, and therefore its precise location, is always "fortuitous" in that accidents by their very nature are unexpected and unpredictable. The *place* of an accident, however, may be considered fortuitous only when the driver did not intend or could not reasonably have anticipated being in that jurisdiction at the time of the accident. See *Kell, supra,* 263 *N.Y.S.*2d at 650 ("[I]n communities located close to State lines or other countries such as Canada, it is very common for people to travel in and out of both states or countries and that although the happening of an accident may be termed fortuitous, the place where the parties are when the accident happens may or may not be."). Here, it is undisputed that Freedom River specifically authorized plaintiffs to drive the car to New York and, in fact, the car was rented for that purpose. *Compare Reale v. Herco, Inc.,* 183 *A.D.*2d 163, 589 *N.Y.S.*2d 502, 508 (1992) (noting that infant plaintiff who voluntarily went to Pennsylvania for specific purpose of spending vacation at Hershey Park had very direct and substantial nexus with Pennsylvania), *with Kilberg v. Northeast Airlines, Inc.,* 9 *N.Y.*2d 34, 211 *N.Y.S.*2d 133, 172 *N.E.*2d 526, 527 (1961)(describing place of injury in air disaster as fortuitous because passenger's "plane may meet with disaster in [s]tate he never intended to cross but into which the plane has

flown because of bad weather ... or an airplane's catastrophic descent may begin in one [s]tate and end in another").

We also reject the lower courts' characterization of Section 388 as a "loss-allocating" rule with no deterrent purpose. Although vicarious liability rules, broadly defined, serve a loss-allocating function, there is no question that from its inception Section 388 also was intended to regulate irresponsible car lending practices, and it is that underlying governmental purpose that guides our inquiry. That the rule regulates highway safety indirectly, by providing an incentive for responsible business practices, rather than directly by stating a "rule of the road" is irrelevant to the strength of New York's policy.

New Jersey's interests, as previously noted, are not as squarely implicated because, although New Jersey's common law plainly shields automobile owners from liability for permissive use of their vehicles in this State, New Jersey does not have a governmental interest in affording that same protection to its residents for tortious conduct out of state. In addition, whether New Jersey's common-law rule comprehensively reflects this State's governmental policy concerning the responsibilities of automobile ownership is unclear. The coexistence of the traditional vicarious liability rule and the more recent legislation requiring auto owners to purchase insurance that provides coverage for permissive users suggests a somewhat ambiguous and inconsistent state policy on the issue of liability without fault. Thus, the application of New York law would certainly not frustrate, and may even be partially congruent with, this State's policy regarding a vehicle owner's responsibility for injuries caused by the negligence of a permissive user of the vehicle.

Although our dissenting colleague asserts that our disposition is inconsistent with decisions in other choice-of-law cases involving automobile accidents, *post* at 154–55, 733 *A.*2d at 1158–59, we discern no such inconsistency. We reiterate that in performing the governmental-interest analysis that governs choice-of-law issues that analysis often is heavily influenced by the specific facts

of the case, especially in comparing the competing interests of the states. We have emphasized that "the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." *Pfizer, supra,* 154 *N.J.* at 198, 712 *A.*2d 634. Accordingly, our disposition of this appeal is influenced significantly by the specific facts relevant to the evaluation of the competing interests of New York and New Jersey, and that evaluation could be affected if the factual context were altered.

For a forum state to favor the application of its own law is not uncommon, and that tendency understandably is enhanced when the parties are all residents of that state. Nevertheless, when the interest of the forum in the determination of an issue is minimal and "a foreign state has a real interest in having its law apply to rights and liabilities of parties to an event which occurred within its borders, this Court has recognized that sound principles of comity often require the application of the foreign state's law to a suit brought in the courts of this State." *Mellk, supra,* 49 *N.J.* at 229, 229 *A.*2d 625. Here, after a "full consideration of the policies and purposes of the rules of the states involved," *ibid.,* we conclude that New York has the paramount interest in the controversy.

## IV

The judgment of the Appellate Division is reversed and the matter is remanded for further proceedings consistent with this opinion.

POLLOCK, J., dissenting

This appeal concerns a choice between the law of New York and that of New Jersey. In a well-reasoned opinion, the Appellate Division held "that New Jersey's contacts with this matter, both in quality and in quantity, outweigh New York's and that, in consequence, the matter is governed by New Jersey's common law." 309 *N.J.Super.* 443, 442–43, 707 *A.*2d 477 (1998). The majority reverses. I would affirm.

Plaintiff, Li Fu, was injured in a single-car accident while a passenger in a car rented in New Jersey by her husband, plaintiff Xiao Kang Su, and her brother-in-law, Kuide Chen. Fu, her husband, and her brother-in-law were all New Jersey domiciliaries. They rented the car from a New Jersey lessor, defendant Freedom River, Inc., doing business as Budget Rent–A–Car of Philadelphia (Freedom River). The lessees intended to travel to several states and return the car to New Jersey. The operator of the car, Li Fu's sister Hong Fu, another New Jersey domiciliary, drove off the road in Hamburg, New York, seriously injuring Li Fu. Following admission to a New York hospital, Li Fu was transferred to JFK Medical Center in New Jersey, where she received most of her hospital care.

Under the law of New York, plaintiffs may recover against Freedom River; under the law of New Jersey, they may not. Finding that New York has a more significant interest than New Jersey in the determination of Freedom River's liability to plaintiffs, the majority reverses. I respectfully dissent. New Jersey's interest so far exceeds New York's that the majority opinion can be understood only as an attempt to reach Freedom River's insurance policy, a consideration that until now has not been dispositive with respect to a choice of law.

## I.

On July 18, 1993, Xiao Kang Su and Kuide Chen rented a car in Lawrenceville, New Jersey, from defendant Freedom River. Su and Chen planned to drive the car to a seminar at Cornell University in Ithaca, New York, continue to Wisconsin, and then return the car to Freedom River in New Jersey on July 27. Freedom River authorized them to drive outside of New Jersey, but did not specifically authorize them to drive to New York or any other state. Accompanying Su and Chen on the trip were their families, including Su's wife, Li Fu, and son, Daniel Su; and Chen's wife, defendant Hong Fu, and daughter, Michelle Chen. All six are New Jersey residents. Although the rental contract

identified Xiao Kang Su and Kuide Chen as the authorized drivers, a Freedom River agent assured them that their wives also could drive the car. Therefore, Hong Fu and Li Fu were permissive users of the rental vehicle.

As part of its standard rental agreement, Freedom River provided the lessees with a "Basic Automobile Liability Insurance Policy," which protects authorized drivers of the rental car against liability for causing bodily injury, death or property damage to third-parties. The policy limit is the minimum coverage mandated by the law of the state where the rental takes place, in this case New Jersey. *See N.J.S.A.* 45:21–2, –3 (requiring commercial automobile lessor to maintain split-liability coverage of at least $10,000/$20,000 for bodily injury and $5000 for property damage). Plaintiffs and their joint lessees could have purchased extra insurance from Freedom River. Optional policies included a "Personal Accident Insurance" policy, which would have provided the authorized drivers and their passengers for bodily injury suffered in an accident, and an additional liability policy that would have increased the limits on coverage for bodily injury or property damage caused to others. A Freedom River agent informed the lessees that their own personal automobile insurance would cover an accident involving the rental car. The lessees declined the optional coverage.

On July 19, 1993, Hong Fu was driving through Hamburg, New York, during a rainstorm. She lost control of the vehicle while trying to find the windshield-wiper switch. The car slid off the road, crossed two lanes of traffic, rolled over and landed in an embankment. It was a one-car accident. Li Fu suffered severe injuries and was hospitalized in New York for thirty days. She then was transferred to JFK Medical Center in New Jersey, where she received extensive medical treatment until April 1994.

All five passengers received personal injury protection (PIP) from their personal insurance policies. Their insurance companies paid for all of the passengers' medical bills, except for those of Li Fu. The cost of Li Fu's medical treatment has exceeded her

personal injury protection cap of $250,000. She has incurred medical bills of approximately $150,000 arising from her treatment in the New York hospital and $250,000 arising from her treatment in New Jersey. She continues to receive outpatient care with concomitant medical expenses.

In July 1994, all five passengers filed a complaint for personal injury damages against Hong Fu, the driver, and Freedom River, the owner of the car. Freedom River, a Delaware corporation with its principal place of business in Philadelphia, is a sub-franchisee of Freedom River, Inc., a Delaware corporation with its principal place of business in Illinois. Freedom River maintains offices in Philadelphia and Lawrenceville. It does not conduct business in New York.

In May 1997, the passengers' claims were arbitrated pursuant to *Rule* 4:21A–1. The arbitrators awarded $15,000 to Kuide Chen, $7500 to Michelle Chen, $100,000 to Xiao Kang Su, $25,000 to Daniel Su, and $3,750,000 to Li Fu. The arbitrators also found Freedom River vicariously liable for Hong Fu's negligence pursuant to New York law, which provides:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, expressed or implied, of such owner.
>
> [*N.Y.Veh. & Traf. Law* § 388(1) (McKinney 1996) (Section 388).]

The award to Li Fu, however, exceeded the individual limit of the $100,000/$300,000 split-limit coverage afforded Hong Fu by her personal insurance policy with the Market Transition Facility (MTF). Hong Fu therefore moved for a trial *de novo* pursuant to *Rule* 4:21A–6(b)(1). Michelle Chen, Xiao Kang Su and Daniel Su settled their claims against Hong Fu for the amount awarded by the arbitrator. Kuide Chen settled his claim for $12,500. Only Li Fu's personal injury claim and Xiao Kang Su's derivative claim for loss of consortium remain outstanding. MTF, on behalf of its insured Hong Fu, has offered its individual policy limit of $100,000 to plaintiffs as settlement. Plaintiffs have rejected this offer. In

August 1997, the trial court entered an order allowing MTF to deposit its policy into court pursuant to *Rule* 4:47–1.

In April 1997, Freedom River moved for summary judgment, arguing that New Jersey law, not New York law, governed its liability as owner of the rental car. Under New Jersey law, the owner of a motor vehicle is not liable for the negligence arising out of the permissive operation of the vehicle, unless the operator was the owner's agent or employee. *Doran v. Thomsen,* 76 *N.J.L.* 754, 756–57, 71 *A.* 296 (E. & A.1908). Although an owner may be directly liable for negligently permitting an operator to use the vehicle, *id.* at 760, 71 *A.* 296, plaintiffs do not contend that Freedom River was negligent in permitting Hong Fu to drive the car.

Initially, the Law Division concluded that all significant relationships were with New Jersey, and the accident's occurrence in New York was a mere "happenstance." The court then reversed itself and held that New York law applied. The Appellate Division reversed. 309 *N.J.Super.* 435, 707 *A.*2d 473 (App.Div.1998). It reasoned that "New York has no interest in the application of § 388 to this matter, which does not involve New York residents, New York vehicles, New York owners, or a New York rental agreement. Nor does the statute implicate a standard of care for drivers using New York roadways." *Id.* at 442, 707 *A.*2d 473.

## II.

### A.

As the forum state, New Jersey's choice-of-law rules apply to determine whether New York or New Jersey law governs this controversy. *Gantes v. Kason Corp.,* 145 *N.J.* 478, 484, 679 *A.*2d 106 (1996). At one time, the law of the place where the accident occurred was dispositive. *Mellk v. Sarahson,* 49 *N.J.* 226, 228, 229 *A.*2d 625 (1967). More recently, courts have recognized that so simplistic an approach does not always achieve a just result. *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons,* 84 *N.J.* 28, 36,

417 *A*.2d 488 (1980). "[W]here a foreign state has no real interest in having its law applied to a particular right or liability of parties [or] to an event which occurred within its borders, a mechanical application of a disability or immunity imposed by *lex loci delicti* may work an unjust result having no relation to the purposes and policies behind the foreign law." *Mellk, supra,* 49 *N.J.* at 229, 229 *A*.2d 625. Thus, New Jersey abandoned the rigid common-law approach, *see ibid,* and now follows "the more flexible governmental-interest analysis in choice-of-law decisions," according to which "the determinative law is that of the state with the greatest interest in governing the particular issue." *Veazey v. Doremus,* 103 *N.J.* 244, 247–48, 510 *A*.2d 1187 (1986).

New Jersey's governmental-interest test is substantially similar to the most-significant-relationship test adopted by the American Law Institute in *Restatement (Second) of Conflict of Laws* (the "*Restatement* ") (1971). Thus, New Jersey now adheres to the method of analysis set forth in *Restatement* sections 6 (Section 6) and 145 (Section 145). *See, e.g., State Farm, supra,* 84 *N.J.* at 34, 417 *A*.2d 488. According to Section 6, a court should consider several general factors when determining which state has the most significant relationship to a dispute, including:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of this particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in determination and application of the law to be applied.

Section 145 focuses the test primarily on the competing policies of:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

As the Appellate Division recognized, New Jersey is the jurisdiction with the predominant contacts. 309 *N.J.Super.* at 442, 707 *A.*2d 473. New Jersey is the place where the relevant conduct, the renting of the car from Freedom River, occurred. New Jersey is the place where plaintiff and defendant driver are domiciled. It is the place where Freedom River does business, and where the relationship between plaintiff and Freedom River is centered. The parties signed the rental contract in New Jersey. Plaintiffs accepted the car in New Jersey and intended to return it to New Jersey. New York's sole contact is as the place where the injury occurred. Although Delaware and Pennsylvania could be considered interested states, as Freedom River's place of incorporation and principal place of business, respectively, the parties do not claim that either of these states has the most significant relationship to the parties or events. The only comparison is between the interests of New York and those of New Jersey.

The next step is to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply." *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187 (internal citations omitted). A state's law applies only if it "will advance the policies that the law was intended to promote." *Pfizer, Inc. v. Employers Ins. of Wausau,* 154 *N.J.* 187, 198, 712 *A.*2d 634 (1998).

### B.

According to the majority, Section 388 is intended (1) to "ensure access by injured persons to a financially responsible insured person against whom to recover for injuries," *ante* at 119, 733 *A.*2d at 1139 (quoting *Morris v. Snappy Car Rental, Inc.,* 84 *N.Y.*2d 21, 614 *N.Y.S.*2d 362, 637 *N.E.*2d 253, 255 (1994)); and (2) to "discourage owners from lending their vehicles to incompetent or irresponsible drivers," *ante* at 119, 733 *A.*2d at 1139 (quoting *Haggerty v. Cedeno,* 279 *N.J.Super.* 607, 609, 653 *A.*2d 1166 (App.Div.), *certif.*

*denied*, 141 *N.J.* 98, 660 *A.*2d 1197 (1995)). In selecting New York law, the majority contends that New York's interest in furthering those two policies predominates. On close analysis, however, the application of Section 388 does not advance New York's interests either in compensation or in deterrence.

New York's interest in compensating domiciliaries of another state, such as New Jersey, is so minimal as to be virtually non-existent. *See Schum v. Bailey*, 578 *F.*2d 493, 496 (3d Cir.1978) (finding that although New York has strong interest in compensation of own domiciliary, it has no interest in compensating non-domiciliary); *Smith v. Bell Sports, Inc.*, 934 *F.Supp.* 70, 77 (W.D.N.Y.1996) (stating that New York's interest in seeing that "non-domiciliary is compensated for any harm caused by the allegedly wrongful conduct is minimal at best"); *Marinelli v. K-Mart Corp.*, 318 *N.J.Super.* 554, 566, 724 *A.*2d 806 (App.Div.1999) (finding that Pennsylvania has strong interest in compensation of own domiciliaries, but has no interest in compensating non-domiciliaries); *Deemer v. Silk City Textile Mach. Co.*, 193 *N.J.Super.* 643, 649, 475 *A.*2d 648 (App.Div.1984) ("New Jersey has no interest in protecting the compensation rights of a non-domiciliary resident."). As New Jersey domiciliaries, plaintiffs' claim to recover under New York law, despite executing the rental contract in New Jersey, is insubstantial. "It would indeed be anomalous to apply foreign law solely to gain access to a deep pocket when local law denies that access." *Haggerty v. Cedeno, supra*, 279 *N.J.Super.* at 612, 653 *A.*2d 1166.

Recourse to Section 388 is unnecessary to ameliorate the hardship that an injured person experiences by not having access to a "financially responsible insured person against whom to recover for injuries." *Supra* at 119, 733 *A.*2d at 1139. Li Fu, as a lessee, already has been afforded access to such a financially responsible entity. Freedom River offered plaintiffs an insurance policy that would have compensated them for their injuries. Unfortunately, neither they nor the other lessees decided to purchase that insurance. Plaintiffs made the choice, as was their right, not to

pay additional premiums for additional coverage. Thus, the existence of the rental contract distinguishes the situation in which a permissive user herself is injured in a single-car accident from the situation in which a third-party, with no prior relationship with the owner, is injured by a permissive user.

Finally, application of Section 388 is not necessary to ensure that "New York vendors who furnish medical and hospital care to injured parties are compensated." *Ante* at 119, 733 *A.*2d at 1139 (quoting *Bray v. Cox,* 39 *A.D.*2d 299, 333 *N.Y.S.*2d 783, 785 (1972)). Here, plaintiff returned to New Jersey after receiving treatment in a New York hospital for one month. She has received most of her hospital care and all of her outpatient care in New Jersey, her home state. Although plaintiff claims that she remains indebted in an unspecified amount for some of the care she received in New York, she has already received payments from her own insurance policy that exceed the total amount of her New York medical bills.

Based on the facts of this case, New York is likewise not interested in the application of Section 388 to deter negligent driving on its roads. Contrary to the majority's characterization, New York courts consistently have described Section 388 as a rule that allocates loss, not one that regulates conduct. *See Padula v. Lilarn Properties Corp.,* 84 *N.Y.*2d 519, 620 *N.Y.S.*2d 310, 644 *N.E.*2d 1001, 1002–03 (1994) (describing loss-allocating rules, as distinguished from conduct-regulating rules, "as those which prohibit, assign, or limit liability after the tort occurs," such as vicarious liability statutes); *Schultz v. Boy Scouts of Am., Inc.,* 65 *N.Y.*2d 189, 491 *N.Y.S.*2d 90, 480 *N.E.*2d 679, 685–86 (1985) (same); *Janssen v. Ryder Truck Rental, Inc.,* 246 *A.D.*2d 364, 667 *N.Y.S.*2d 369 (1998) (finding that Section 388 is loss-allocating rule and thus "the jurisdiction of the parties' domiciles has paramount interest"); *see also Heisler v. Toyota Motor Credit Corp.,* 884 *F.Supp.* 128, 131 (S.D.N.Y.1995) (stating, in case involving choice between New York and New Jersey's rule regarding owner liability, that "[t]he New York Court of Appeals regards rules governing vicarious liability as loss allocating, not conduct regulating");

*Buglioli v. Enterprise Rent–A–Car,* 811 *F.Supp.* 105, 108 (E.D.N.Y.1993) (identifying Section 388 as "loss-distribution" rule).

Any interest New York has in deterrence is diminished in this case because its contact as the situs of the accident was fortuitous. The occupants of the vehicle were passing through New York on their way from New Jersey to the Midwest. This single-car accident could have occurred in any of the states through which the plaintiffs intended to drive. *See Veazey, supra,* 103 *N.J.* at 250, 510 *A.2d* 1187 (finding that New Jersey's connection to car accident as situs of injury is "fortuitous fact"); *Wilson v. Faull,* 27 *N.J.* 105, 124, 141 *A.2d* 768 (1958) ("Choice of law ... should not be governed by wholly fortuitous circumstances such as where the injury occurred."); *see also Thompson v. Yue,* 426 *F.Supp.* 853, 855 (D.N.J.1977) ("The New Jersey courts have taken the position that the mere fact that an accident occurs within the borders of a foreign jurisdiction is insufficient to classify that jurisdiction's interest as strong enough to warrant the application of its law."). Furthermore, the possible application of New York law would not have deterred Freedom River from permitting Hong Fu to drive the rental vehicle. The aim of Section 388 is not to deter the negligent operation of motor vehicles, but to deter loaning vehicles to incompetent drivers. Plaintiff, however, does not claim that the operator was incompetent. Freedom River had no reason to bar Hong Fu from driving. She had a valid New Jersey driver's license and no prior record of unsafe driving. If anything, Li Fu, as Hong Fu's sister and joint lessee, was in a better position than Freedom River to judge Hong Fu's competence. In fact, Li Fu specifically made sure that her sister could drive the rental car before agreeing to take the trip. Thus, an expectation that New York law would be applied could not have prevented this accident.

Lastly, New Jersey law is as much a deterrent as is that of New York. Even under New Jersey law, an owner of a vehicle is

directly liable for negligently permitting an individual to drive the owner's car. *See Doran, supra,* 76 *N.J.L.* at 756–57, 71 *A.* 296.

The majority relies on two other considerations to support the application of New York law. First, the majority finds that "there is a reasonable relationship between the defendant and the state whose local law is to be applied." *Ante* at 127, 733 *A.*2d at 1143. Although New York has a reasonable relationship to Freedom River, the existence of such a relationship is not dispositive. For choice-of-law purposes, the question is not whether one of several competing jurisdictions has a relationship that is reasonable, but which one has the relationship that is most significant. Section 174 of the *Restatement* states that, just as with any choice-of-law determination in a tort action, "the local law of the state which has the most significant relationship to the occurrence and the parties with respect to the issue of vicarious liability should be applied in determining whether one person is liable for the tort of another person." *Restatement, supra,* § 174 comment a. Unlike other choice-of-law determinations, Section 174 establishes a second requirement that there must be a reasonable relationship between the defendant and the state imposing vicarious liability. *Ibid.* This second prong of Section 174 is intended as an additional safeguard for a defendant who may not have foreseen the imposition of vicarious liability. The majority, however, uses this safeguard as a means for imposing such liability in the first place. In short, the majority has stood Section 174 on its head.

Second, the Court asserts that "[i]n the context of a New York accident, New York courts have unwaveringly applied Section 388, notwithstanding the absence of any additional 'contacts' with the transaction." *Ante* at 128, 733 *A.*2d at 1144 (citing *Kell v. Henderson,* 47 *Misc.*2d 992, 263 *N.Y.S.*2d 647 (Sup.Ct.1965), *aff'd* 26 *A.D.*2d 595, 270 *N.Y.S.*2d 552 (1966); *Bray v. Cox, supra,* 333 *N.Y.S.*2d at 783; *Himes v. Stalker,* 99 *Misc.*2d 610, 416 *N.Y.S.*2d 986 (Sup.Ct.1979)). Carefully read, however, the New York decisions merely reflect the application of New York's unique choice-of-law rules to the facts of specific cases. The resolution of this

case turns not on the choice-of-law rules of New York, but of New Jersey.

Despite New York courts' apparent preference for applying Section 388, the New York Court of Appeals has demonstrated that New York's interest, as the place where the accident occurred, should yield to New Jersey's interest, as the place where the parties reside and as the center of their relationship. *See Schultz, supra,* 491 *N.Y.S.*2d 90, 480 *N.E.*2d at 679. In *Schultz,* a Franciscan brother allegedly sexually abused several New Jersey boy scouts on a camping trip in New York. The boys' parents sued the Boy Scouts of America and the Franciscan Brothers for negligent hiring and supervision. The injured boys, their parents, the troop leader, the local scout troop, and the Boy Scouts of America were domiciled in New Jersey. The Franciscan order was domiciled in Ohio. Defendants asserted that New Jersey's charitable immunity statute, *N.J.S.A.* 2A:53A–7, barred the action. Adopting the defendants' argument, the Court of Appeals held that New Jersey law governed the claims against both defendants. The court found that New York did not have an interest in compensating the plaintiffs because the injured boys were not wards of New York and there were no New York medical creditors. Additionally, the court observed that the rule at issue, that of charitable immunity, was a loss-allocating rule. Because the parties did not reside in New York, New York's interest in deterrence was weak. Conversely, the court found that New Jersey, as the place where the parties resided and where their relationship was centered, had a strong connection to the dispute.

Although New York's interest in applying its vicarious liability statute is minimal, New Jersey's multiple interests are substantial. First, New Jersey has the greater interest in allocating the loss between its residents according to its own law. New Jersey, not New York, will bear the consequences of the loss allocation. The *Restatement* recognizes the qualitative importance of this contact:

[T]he fact that the domicil and the place of business of all parties are grouped in a single state is an important factor to be considered in determining the state of the applicable law. The state where these contacts are grouped is particularly likely to

be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there. This state may also be the state of the applicable law when conduct and injury occurred in a place that is fortuitous and bears little relation to the occurrence and the parties.

[*Restatement, supra*, § 145 comment e.]

Here, plaintiffs' domicile and Freedom River's place of business are grouped in New Jersey. Additionally, Freedom River's conduct, the rental transaction, occurred in New Jersey. For the purpose of this action, the place of the injury is a mere fortuity that bears no other connection to the parties.

The *Restatement* further recognizes the importance of a state's contact as the parties' domicile when a court must decide whether to apply a law shielding one party from liability:

The local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability to the other.... [For example,] the circumstances under which a guest passenger has a right of action against the driver of an automobile for injuries suffered as a result of the latter's negligence may be determined by the local law of their common domicil, if at least this is the state from which they departed on their trip and that to which they intended to return, rather than by the local law of the state where the injury occurred.

[*Restatement, supra*, § 145 comment d.]

Rules that regulate the host's liability to his guest are similar to those that relate to an owner's liability for the negligence of a permissive user. Both are loss-allocating rules. Here, plaintiffs and Freedom River share a common residence in New Jersey.

The *Restatement*'s preference for the application of the law of the state where the parties reside reflects that state's "interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of [its] loss-distribution tort rules." *Schultz, supra*, 491 *N.Y.S.*2d 90, 480 *N.E.*2d at 687. Applying New Jersey's common-law rule ensures that the loss in a dispute between New Jersey residents will be governed in accordance with New Jersey's sense of fairness and justice. *See* Joseph William Singer, *A Pragmatic Guide to Conflicts*, 70 *B.U. L.Rev.* 731, 749 (1990) (identifying "a state's sense of justice or fairness in particular social relationships" as one type of substantive policy underlying law); *ante* at 132, 733 *A.*2d at 1146 (citing *Aboud v. Budget Rent A*

*Car Corp.*, 29 *F.Supp.*2d 178, 182 (S.D.N.Y.1998)) ("New Jersey has an interest in ... assur[ing] that victims of automobile accidents 'are treated fairly and that some of those victims not be granted extraordinary rights and preferences.'") (citation omitted). Until today, New Jersey has deemed it unfair to burden financially an innocent automobile owner:

> New Jersey's common law rule regarding owner liability is ... designed to shield an owner from liability in cases in which the owner has not been negligent and in which the culpable driver is not related to the owner in a way that will justify the imposition of vicarious liability under traditional principles of the law of agency or master servant. That shield is consistent with the principle that tort liability in the context of automobile-related injuries is based on fault.
>
> [*Haggerty, supra,* 279 *N.J.Super.* at 611–12, 653 *A.*2d 1166.]

The majority attempts to undercut New Jersey's interest in applying its common-law rule on owner liability by stating that the rule "has lost some of its vitality as a statement of public policy." *Ante* at 121, 733 *A.*2d at 1140. Adoption of a "no-fault" approach in other areas of tort law, however, should not undermine the strength of the owner-liability rule, which the Legislature has left in place.

Similarly, New Jersey has a significant interest, as the place where the rental transaction was executed, in protecting the parties' justifiable expectations. Those expectations are based on New Jersey regulations that define the parameters of a lessor-lessee relationship established and centered in New Jersey. *See, e.g., N.J.S.A.* 45:21–3. "Courts often apply the law of ... the place where the parties center their relationship if the law defines the fair contours of their relationship, and if the law of the place of the conduct or injury is not mainly geared to deterrence or regulation of conduct, but to loss-allocation." Singer, *supra,* 70 *B.U. L.Rev.* at 746.

Only the application of New Jersey law can vindicate the parties' justifiable expectations. Freedom River's own policy and the additional coverage it offered to the New Jersey lessees reasonably were based on an understanding that New Jersey law would govern Freedom River's obligations to those lessees. Pre-

sumably, if Freedom River had expected to be liable under the law of another state, such as New York, for injuries to its lessees that a lessee herself caused, it would have incorporated the cost of that policy in the price of the car rental. On the other hand, plaintiffs had no expectation that New York law would allow them to recover from Freedom River if they were injured as a result of their own negligence.

To justify reaching Freedom River's insurance policy, the majority argues that Freedom River anticipated its liability under New York law. In support of the argument, the majority states that, in addition to carrying insurance mandated by statute in New Jersey, Freedom River was insured under a policy with personal liability coverage of $500,000 for a single accident, and an excess policy of $2,000,000. *Ante* at 136, 733 *A*.2d at 1148. The majority's analysis begins with the understandable proposition that from the operation of its leased vehicles in other states, including New York, Freedom River should have expected potential liability to third parties in those states. That expectation, however, does not justify the conclusion that Freedom River should anticipate increased liability to the lessees themselves. Freedom River's excess policies reflect expected liability for injuries resulting from its own negligence, such as negligent maintenance of a vehicle, or injuries to third-parties resulting from the negligence of a permissive user.

New Jersey has a demonstrable interest in furthering the specific policies underlying its own rules on the liability of car owners. A more compassionate rule, such as New York's, is an understandable alternative. That alternative, however, is not the only choice. New Jersey remains free to choose, as it has, a rule more favorable to owners. As the *Restatement* states: "A rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability." *Restatement, supra,* § 145 comment c.

According to the majority, New Jersey's rule simply adheres "to the well-established, common-law principle that liability for automobile negligence should be allocated solely on the basis of fault." *Ante* at 120, 733 *A.*2d at 1139. In fact, New Jersey's rule also reflects other considerations. The New Jersey rule encourages entities such as Freedom River to conduct business in New Jersey, thus employing New Jersey residents and providing tax revenue to the State. Ignoring the New Jersey rule will impose additional costs, initially on Freedom River and ultimately on New Jersey lessees. Presumably, the New Jersey rule reduces the cost of automobile insurance. The cost of that insurance, already high, must now reflect the added cost of liability under the laws of other states, such as New York. Ultimately, the imposition of liability will increase the cost of renting a car in New Jersey. The rule applies not only to automobile lessors, but also to ordinary automobile owners. Thus, the imposition of liability will increase the cost of owning a car for everyone.

In addition to advancing New Jersey's interests, the application of New Jersey law would advance the interest in maintaining certainty, predictability, and uniformity. *See Restatement, supra,* § 6(f). Those interests would be served only if the ability of a lessee to recover damages for personal injuries from a lessor did not change as the lessee travels across state lines. *See Veazey, supra,* 103 *N.J.* at 251, 510 *A.*2d 1187. Lessors and lessees need to know at the time of contracting which state's law will determine their liability to each other so they can make informed decisions about such matters as the type and amount of insurance to carry. Obviously, it was impossible for the parties here to predict that an accident would occur in New York, rather than in another state.

Lastly, the application of New Jersey law would comport with our prior decisions in choice-of-law cases involving liability for automobile accidents. Those decisions have favored the interests of the state where the parties were domiciled and where the parties' relationship was centered as qualitatively stronger than the interests of the state where the injury occurred.

In *Veazey, supra,* 103 *N.J.* at 244, 510 *A.2d* 1187, this Court applied Florida's interspousal immunity to bar a husband from suing his wife for injuries arising out of a car accident in New Jersey. We found that Florida's interest in governing the parties' marital relationship, which was centered in Florida, was more important than New Jersey's contact as the situs of the injury, which was merely a "fortuitous fact that ... does not compel the conclusion that our rule on interspousal immunity should apply." *Id.* at 250, 510 *A.2d* 1187. The Court also emphasized that uniformity would be established only if "the capacity of one family member to sue another, ... [did] not change as a husband and wife cross state lines on a motor trip." *Id.* at 251, 510 *A.2d* 1187.

In *State Farm, supra,* 84 *N.J.* at 28, 417 *A.2d* 488, we examined whether an Alabama automobile insurance policy covered several passengers who were killed while driving in the insured's automobile without permission. Although the accident occurred in New Jersey, the insurance policy was issued in Alabama by an Alabama insurance company to an insured who was domiciled in Alabama and who purchased and registered the car in Alabama. At the time of the accident, the insured was serving in the armed forces and was stationed in New Jersey. Under Alabama law, the injured passengers were not covered since they did not have express or implied consent to use the car. Nevertheless, we applied Alabama law because "it will protect the reasonable expectations of the parties as to their insured risks and will serve the needs of certainty, predictability and uniformity." *Id.* at 43, 417 *A.2d* 488.

In *Pfau v. Trent Aluminum Co.,* 55 *N.J.* 511, 263 *A.2d* 129 (1970), we applied the identical law of New Jersey and Connecticut to permit a guest to sue his host for negligence, even though the automobile accident occurred in Iowa and the guest-host relationship began in Iowa. We found that the states that were the permanent domiciles of the guest and host had the paramount interests. Our decision in *Pfau* followed our holding in *Mellk, supra,* in which we applied New Jersey law to a guest's negligence

action against his host for injuries arising out of an automobile accident in Ohio. New Jersey had the strongest connection to the dispute because the guest and host were domiciled in New Jersey and their guest-host relationship was centered there. The majority, however, disregards these precedents and gives undue weight to the fact that Li Fu's injury occurred in New York.

For these reasons, I believe that New Jersey has the most significant relationship to these parties and the accident, and would apply New Jersey's owner-liability rule in this case. I therefore dissent.

Justice GARIBALDI joins in this dissent.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, O'HERN, STEIN, and COLEMAN—5.

*For affirmance*—Justices POLLOCK and GARIBALDI—2.