In re PANACRYL SUTURES PRODUCTS LIABILITY CASES.

This document applies to:

Alyssa Johnson, et. al.

v.

Johnson & Johnson, et. al.

Denise Rondot, et. al.

v.

Johnson & Johnson, et. al.

Maureen Thompson, et. al.

v.

Johnson & Johnson, et. al.

Sandra Vermilyea, et. al.

v.

Johnson & Johnson, et. al.

Brian K. Edwards, et. al.

v.

Johnson & Johnson, et. al.

No. 5:08–MD–1959–BO.
Civil Action Nos. 3:08–930 (DNJ), 3:08–931(DNJ), 3:08–932(DNJ), 3:08–933(DNJ), 3:08–3337(DNJ).

United States District Court,
E.D. North Carolina,
Western Division.

Nov. 13, 2009.

John E. Toma, Jr., Toma Zensen, LLC, St. Louis, MO, for James C. Bishop, Betty Ann Bishop, Christine L. Bledy, Leslie A. Bledy, Losanna Truxillo, Alyssa Johnson, David Johnson, Denise Rondot, Maureen Thompson, Sandra Vermilyea, Perlene Herring, Lisa M. Locklear, Brian Edwards, Feicia Edwards, David Vermilyea.

Connie L. Grace, Gary Holt & Associates, P.A., Little Rock, AR, for James C. Bishop, Betty Ann Bishop.

Franklin G. Shaw, Leger & Shaw, Covington, LA, for Losanna Truxillo.

Jane S. Kelsey, Stacie L. Vacca, Lum, Drasco & Positan, LLC, Roseland, NJ, for Alyssa Johnson, David Johnson, Denise Rondot, Maureen Thompson, Sandra Vermilyea, Brian Edwards, Feicia Edwards, David Vermilyea.

Melissa M. Zensen, Toma Zensen, LLC, St. Louis, MO, for Alyssa Johnson, David Johnson, Denise Rondot, Maureen Thompson, Sandra Vermilyea, Perlene Herring, Lisa M. Locklear, Brian Edwards, Feicia Edwards, David Vermilyea.

Eric R. Harlan, Shapiro, Sher, Guinot & Sandler, Baltimore, MD, for Perlene Herring, Lisa M. Locklear.

Gregory L. Jones, Greg Jones & Associates, Wilmington, NC, for Perlene Herring, Lisa M. Locklear, Brian Edwards, Feicia Edwards.

Paul M. Sandler, Shapiro, Sher, Guinot & Sandler, Baltimore, MD, for Perlene Herring, Lisa M. Locklear.

Dixie Thomas Wells, J. Donald Cowan, Jr., Andrew S. Chamberlin, Ellis & Winters LLP, Lisa Kaminski Shortt, Smith Moore Leatherwood, LLP, Greensboro, NC, Deirdre Russo Kole, Drinker Biddle & Reath, LLP, Florham Park, NJ, Mary M. Dillon, Ellis & Winters, Raleigh, NC, for Johnson & Johnson, Johnson & Johnson Health Care Systems Inc., Ethicon, Inc.

## ORDER

TERRENCE W. BOYLE, District Judge.

This matter is before the Court on Plaintiffs' Motion to Certify Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' Motion is DENIED.

### INTRODUCTION

Panacryl Absorbable Sutures ("Panacryl Sutures") are synthetic, braided, undyed, absorbable surgical sutures comprised of a copolymer of lactide and glycolide designed to remain in the body for 24–36 months after surgery to provide wound support. Panacryl Sutures were designed and manufactured by Defendant Ethicon, Inc. ("Ethicon") and marketed and sold to physicians, hospitals, and other users by Defendant Johnson & Johnson Healthcare Systems, Inc. Defendant Johnson & Johnson is the owner of both Ethicon and Johnson & Johnson Healthcare Systems, Inc.

Ethicon and Johnson & Johnson Healthcare Systems began marketing Panacryl Sutures in October, 1999, and stopped manufacturing Panacryl Sutures as a stand-alone product for general surgical application in July, 2002. During that time, over two million packages of Panacryl Sutures were sold. In May, 2006, Ethicon issued a "Dear Doctor" letter which was classified by the FDA as a Class II Recall.

The named Plaintiffs, Alyssa Johnson, Denise Rondot, Maureen Thompson, Sandra Vermilyea, and Brian Edwards, filed suit against Defendants in the Superior Court of New Jersey, Middlesex County. Plaintiffs allege that Panacryl Sutures are defective in that they cause a high rate of foreign body reactions when used as directed. Plaintiffs also allege that Defendants failed to provide adequate warning of the dangers associated with Panacryl Sutures. Defendants removed all five cases to the United States District Court for the District of New Jersey. The Panel on Multidistrict Litigation transferred these cases to the United States District Court for the Eastern District of North Carolina, Western Division.

On December 30, 2008, this Court entered an Order setting forth the schedule for completing expert depositions and submitting briefs on the issue of class certification. On December 31, 2008, Plaintiffs filed a Motion to Certify National Class Action. Defendants responded on February 16, 2009, and filed a supplemental memorandum in opposition on July 22, 2009. A hearing was held in Raleigh, North Carolina, on July 22, 2009. The motion is now ripe for ruling.

## DISCUSSION

Granting class status on motion by either party is soundly within the discretion of the district court. *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.1993). The decision to certify a plaintiff class requires a two step analysis. First, the court examines whether the four prerequisites set forth in Rule 23(a) are met. If so, the court must then decide whether the controversy in question qualifies under one or more of the three permissible class action categories defined by Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The party seeking certification bears the burden of proof. *See Windham v. American Brands, Inc.*, 565 F.2d 59, 65 (4th Cir.1977); *Rodger v. Electronic Data Systems*, 160 F.R.D. 532 (E.D.N.C.1995).

## I. Choice of Law

Before determining whether the requirements of Rule 23 are met, this Court must determine which state or states' substantive law will apply to the prospective class members' claims. District courts exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In MDL proceedings, the transferee court must apply the law of the state in which the transferor court is located, including the transferor forum's choice of law rules. *In re Vioxx Prods. Liab. Litig*, 239 F.R.D. 450, 454 (E.D.La.2006). The prospective class representatives filed their claims in the Superior Court of New Jersey. Defendants removed all five cases to the United States District Court for the District of New Jersey. The Panel on Multidistrict Litigation transferred these cases the Eastern District of North Carolina. As such, New Jersey's choice of law rules apply.

New Jersey applies a "flexible 'governmental-interest' test that seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation." *Fu v. Fu*, 160 N.J. 108, 733 A.2d 1133, 1138 (1999); *Veazey v. Doremus*, 103 N.J. 244, 510 A.2d 1187, 1189 (1986). This test requires a two step analysis. The first step is to determine if a conflict exists between the substantive laws of New Jersey and other interested states. *Veazey*, 510 A.2d at 1189. If a conflict exists, the second step is to determine which state has the most significant relationship to the occurrence and the parties. *Fu*, 733 A.2d at 1138.

Plaintiffs contend that New Jersey's choice of law rules require the application of New Jersey's substantive law to all prospective class members' claims. "The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when the various laws have not been identified and compared." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir.2004); *In re Vioxx*, 239 F.R.D. at 455 ("Parties seeking to have the law of a single jurisdiction applied to a nationwide class must assess the laws of all interested jurisdictions, not just the one of their choosing."). Plaintiffs have not identified and compared the laws of all interested states and have thus failed to carry this burden. *See Gariety*, 368 F.3d at 370; *In re Telectronics Pacing Systems*, 172 F.R.D. 271 (S.D.Ohio 1997) (granting class certification only after Plaintiffs provided an analysis of the laws of all 50 states and a system of sub classes to take into account variations in state law); *In re Vioxx*, 239 F.R.D. at 455 (citing *Castano v. Am. Tobacco*, 84 F.3d 734 (5th Cir.1996)).

### A. Conflicts Between the Substantive Laws of the Interested States

Conflicts exist between the substantive laws of New Jersey and other inter-

ested states with regard to the class members' claims.[1] For example, while the New Jersey Products Liability Act recognizes a cause of action for strict products liability, N.J. Stat. Ann. § 2A:58C, named Plaintiff Sandra Vermilyea's home state of North Carolina does not recognize strict liability in products liability cases. *See* N.C. Gen.Stat. § 99B–1.1 (2008) ("There shall be no strict liability in tort in product liability actions."). New Jersey's products liability statute provides a complete defense to a design defect claim where the defect was "caused by an unavoidably unsafe aspect of the product and the product was accompanied by an adequate warning or instruction." N.J. Stat. Ann. § 2A:58C–3(a)(3). But Wisconsin has rejected this approach. *See Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 342 N.W.2d 37 (1984), *cert. denied*, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984). And New Jersey requires plaintiffs in products liability cases to prove the existence of a safer alternative design. *See Cavanaugh v. Skil Corp.*, 164 N.J. 1, 751 A.2d 518, 523 (2000). But Arkansas does not require proof of a safer alternative. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 846 (8th Cir.2001). Therefore, the Court must advance to the second step.

## B. The Most Significant Relationship to the Occurrence and the Parties

 Having found that conflicts exist between the substantive laws of the interested states, this Court must now determine which state has the most significant relationship to the occurrence and the parties with respect to the issue being litigated. This inquiry requires the Court to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Fu*, at 1138–39 (quoting *Veazey*, 103 N.J. at 248, 510 A.2d 1187). New Jersey's choice of law rules weigh the

five factors described in § 6 of the Second Restatement of Conflict of Laws when determining which state's substantive law will govern in tort cases: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Erny v. Estate of Merola*, 171 N.J. 86, 792 A.2d 1208, 1217 (2002). The most important factor is the competing interests of the states. *Id.*

### 1. The Interests of Interstate Comity

 "[T]he interests of interstate comity require courts to consider whether application of a competing state's law would frustrate the policies of other interested states." *Fu*, 733 A.2d at 1141. In a nationwide products liability case "the issue before the Court is not whether a specific aspect of a state's law ... should be applied, but whether the entire scope of one state's products liability law, and all aspects arising thereunder, should be applied to the class. Thus, this situation requires the Court to consider the purpose of products liability laws in general, rather than just the purpose behind a specific state law." *In re Vioxx*, 239 F.R.D. at 455.

Both New Jersey and Plaintiffs' home states have an interest in applying their respective products liability laws to this case. Each plaintiff's home state has an interest in protecting its citizens from injuries stemming from products introduced into the stream of commerce by out of state corporations and the scope of recovery available to its citizens. *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997). On the other hand, New Jersey has an interest in regulating domestic corporations and introducing safe products into the stream of commerce. *Gantes v. Kason Corp.*, 145 N.J. 478, 679 A.2d 106, 115 (1996).

---

1. *See In re Vioxx*, 239 F.R.D. at 455 ("[T]here are conflicts between the law of New Jersey and the laws of the other fifty jurisdictions in regard to negligence, strict liability, failure to warn, learned intermediary, and defective design."); *In re Stucco Litig.*, 175 F.R.D. 210, 216–17 (E.D.N.C.1997) ("The court thus has some concern about how it would handle variations in state negligence law. Of course, the court must give effect to the variations in state law, however minor they may be."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742–43 n. 15 (5th Cir.1996) (noting differences between state laws with respect to strict liability, assumption of risk, and comparative fault in products liability cases).

Although New Jersey's interest is substantial, the interests of the prospective class members' home states in protecting residents from in-state injuries caused by out-of-state entities outweigh New Jersey's interest in regulating domestic corporations. As such, this Court finds that the interests of interstate comity weigh in favor of applying the laws of the prospective class members' domiciles.

### 2. The Interests of the Parties

The second factor requires an analysis of the justified expectations of the parties and their need for predictability. *Fu*, 733 A.2d at 1141. It is unlikely that Plaintiffs would have expected their claims to be governed by New Jersey law. Plaintiffs here probably had no idea that Panacryl Sutures were used in their surgeries or that Panacryl Sutures were manufactured by Ethicon. Defendants, on the other hand, could reasonably expect to be governed by the laws of New Jersey because Defendants designed Panacryl Sutures in New Jersey and introduced them into the stream of commerce from New Jersey. But because Defendants distributed Panacryl Sutures in all fifty states and several foreign countries, Defendants reasonably could have expected to be subject to the laws of each of these jurisdictions. As such, the Court finds that the second factor, the interests of parties, weighs in favor of the application of the laws of the prospective class members' home jurisdictions.

### 3. The Interests Underlying the Field of Tort Law

In evaluating the interests of the underlying field of tort law, the Court must consider the degree to which deterrence and compensation, the fundamental goals of tort law, would be furthered by the application of a state's law. *Fu*, 733 A.2d at 1141. "When the tort rule primarily serves a deterrent purpose, the state where the harmful conduct took place will likely have the dominant interest with respect to that rule. When the tort rule is designed primarily to compensate a victim for his or her injuries, the state where the injury occurred, which is often where the plaintiff resides, may have the

greater interest in the matter." *Id.* (citing Restatement (Second) of Conflict of Laws § 145.). Here, each prospective class member's home jurisdiction has a stronger interest in deterring foreign corporations from injuring its residents and determining the scope of recovery available to its residents than New Jersey does in deterring wrongdoing by its corporate citizens. *See In re Vioxx*, 239 F.R.D. at 456; *In re Ford Motor Co.*, 174 F.R.D. at 348.

### 4. The Interests of Judicial Administration

Judicial administration clearly favors of the application of New Jersey law to this case. The application of a single jurisdiction's law is more practical than the application of the laws of several jurisdictions. But the interests of judicial administration "must yield to a strong state interest implicated by the remaining factors." *Fu*, 733 A.2d at 1142.

### 5. The Competing Interests of the States

The competing interests of the states is the most important factor in determining which state's substantive law will apply. The contacts relevant to the interests of the states include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Erny*, 792 A.2d at 1217.

In the vast majority of cases, the place where the injury occurred will be the place where each prospective class member resides. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 457–58 (E.D.La.2006) ("Each plaintiff most likely was prescribed Vioxx, ingested Vioxx, and allegedly suffered personal injury in his or her state of residence. As such, in the present case, the injuries occurred in fifty-one jurisdictions, fifty of which are not New Jersey"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F.Supp.2d 795, 814 (E.D.Tex.2002) ("the jurisdictions where Plaintiffs had Norplant implanted are also the places where the conduct

causing the injuries occurred"). Although some variation surely exists, the prospective class members here were most likely implanted with Panacryl Sutures during surgeries that occurred in their home states and any adverse reaction most likely occurred in their home states.

 Each prospective class member's domicile will also qualify as the place where the injury causing conduct occurred. *See In re Consol. Parlodel Litig.*, 22 F.Supp.2d 320, 326–27 (D.N.J.1998) ("Although Parlodel was designed and manufactured in New Jersey, and NPC made various decisions in New Jersey, Parlodel was marketed and consumed by Plaintiffs in their home districts. Thus, it appears as though these claims arose in Plaintiffs' home districts."); *In re Vioxx,* 239 F.R.D. at 458 ("Vioxx was advertised in, marketed in, shipped into, prescribed in, sold in, ingested in, and allegedly caused harm in fifty-one jurisdictions. Merck's conduct may have originated in New Jersey, but it was effectuated and felt by every plaintiff in their own home jurisdiction."). Panacryl Sutures were manufactured in Georgia and marketed in, sold in, and implanted in all fifty states and several foreign jurisdictions. Thus, the conduct causing the injuries occurred in the prospective class members' domiciles.

Finally, the relationship between each prospective class member and Defendants is centered in the prospective class members' domiciles. *See In re Vioxx,* 239 F.R.D. at 450. This is where each plaintiff's surgeon most likely purchased and implanted Panacryl Sutures. Defendants chose to reach out to the prospective class members' home states by marketing and distributing Panacryl Sutures in all fifty states and several foreign countries. Moreover, even in the unlikely event that a prospective class member knew that Ethicon manufactured Panacryl Sutures or that Johnson & Johnson Health Care Systems marketed Panacryl Sutures, it is unlikely that he or she knew that Defendants were incorporated in and operated out of New Jersey.

The Supreme Court of New Jersey conducted a similar assessment of the interests of Michigan and New Jersey in *Rowe v. Hoffman–La Roche, Inc.,* 189 N.J. 615, 917 A.2d 767 (2007), a products liability action involving the drug Accutane. A Michigan resident who was prescribed Accutane in Michigan and ingested Accutane in Michigan brought a failure to warn action against that the New Jersey based manufacturers. In an opinion mirroring Plaintiffs' arguments here, the Appellate Division of the Superior Court of New Jersey found that New Jersey's substantive law applied to the plaintiff's failure to warn claim because "the cited conduct of the defendants with respect to the Accutane warning occurred largely in New Jersey" and New Jersey has an interest in deterring the domestic manufacture of unsafe products. 383 N.J.Super. 442, 456, 892 A.2d 694 (2006) (citing *Gantes v. Kason Corp.,* 145 N.J. 478, 679 A.2d 106 (1996)). The Supreme Court of New Jersey reversed the Appellate Division, holding that "[t]o allow a life-long Michigan resident who received an FDA-approved drug in Michigan and alleges injuries sustained in Michigan to by-pass his own state's law and obtain compensation for his injuries in this State's courts completely undercuts Michigan's interests, while overvaluing our true interest in this litigation." 189 N.J. 615, 630, 917 A.2d 767, 776 (2007). The named Plaintiffs here are similarly situated in that they are all residents of states other than New Jersey alleging injuries from Panacryl Sutures implanted in states other than New Jersey who brought their claims in New Jersey Superior Court.

Therefore, having considered the contacts relevant to the competing interests of the states in light of *Rowe v. Hoffman–LaRoche,* this Court concludes that the competing interests of the states, the most important factor, weighs in favor of applying the law of each plaintiff's home jurisdiction.

### C. Choice of Law Conclusion

 Having considered the interests of interstate comity, the interests underlying the field of tort law, the interests of parties, the interests of judicial administration, and the competing interests of the states, this Court concludes that New Jersey's choice of law rules would apply the substantive laws of each class member's home jurisdiction to his or her claims.

## II. Rule 23(a)

In order to obtain class certification, Plaintiffs must demonstrate that the controversy satisfies the four basic requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### A. Numerosity

 The members of the prospective class here are so numerous that joinder of all members is impracticable. Over 2 million packages of Panacryl Sutures have been sold. Plaintiffs estimate that 10 percent of individuals treated with Panacryl Sutures suffered an adverse reaction. Although Defendants argue that the actual number is several orders of magnitude below Plaintiffs' estimate, the actual figure is sure to satisfy the numerosity requirement.

### B. Commonality

 Rule 23(a)(2) does not require commonality with respect to every factual or legal question, so long as at least one issue is common to all members. *See Holsey v. Armour & Co.,* 743 F.2d 199, 216–217 (4th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). Factual differences among the class members' cases do not violate the rule, so long as a common legal theory is shared. *Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir. 1981). In this case, Plaintiffs' claims that Panacryl sutures have caused foreign body reactions and that Defendants failed to provide adequate warnings will be common to all class members.

### C. Typicality

 Rule 23(a)(3), commonly referred to as the "typicality" requirement, states that the claims and defenses of the class representatives must be typical of the claims of the other class members. Typicality does not mean identicalness. *See Central Wesleyan College v. W.R. Grace & Co.,* 143 F.R.D. 628, 636 (D.S.C.1992), *aff'd.* 6 F.3d 177 (4th Cir.1993). The class representative may satisfy this requirement by demonstrating that his or her claims arise from the same practices, and are based on the same theory of law, as the class claims. *Holsey v. Armour & Co., supra* at 217; *see Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998) ("The essence of the typicality representation is captured by the notation 'as goes the claim of the named plaintiff, so go the claims of the class.' "). Here, the named Plaintiffs' claims that Panacryl Sutures caused adverse foreign body reactions and that Defendants failed to provide adequate warnings will be typical of the class as a whole. But because Plaintiffs have not shown that the prospective class representatives' claims will take into account the substantive laws governing every class member, this Court's conclusion that the laws of the prospective class members' home jurisdictions will govern their claims precludes a finding of typicality. *See In re Vioxx,* 239 F.R.D. at 460 ("The applicability of multiple substantive laws also precludes a finding of typicality."); *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir.2002) ("the test is whether [plaintiff's] claims are typical, not whether she is. Given the differences among the state laws, it cannot be said that [plaintiff's] claims are 'typical' of the class ..."); *In re Telectronics Pacing Systems,* 172 F.R.D. 271, 281 (S.D.Ohio 1997) ("In our Decertification Order, we found that the claims of the unnamed plaintiffs' cases than on the similarity of the legal and primary reason we found the claims of the proposed class representatives from Ohio were atypical is that Ohio is one of the minority of states that does not recognize negligence as a cause of action in a products liability action.").

### D. Adequacy

 Rule 23(a)(4) states that the class representatives must be fair and adequate representatives of the entire class. This rule has been interpreted to include two separate requirements. The first requirement is that the plaintiffs must be represented by adequate counsel. *See Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 183 (4th

Cir.1993). Plaintiffs' counsel here are experienced litigators with sufficient prior exposure to class actions. The second requirement of Rule 23(a)(4) is that the named Plaintiffs must not have any interests antagonistic to the class. *See Barnett v. W.T. Grant Co.*, 518 F.2d 543, 546 (4th Cir.1975). The named Plaintiffs interests are similar the interests of class, but the "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir., 1996). Plaintiffs here have not met their burden of showing that the claims of the prospective class representatives would take into account the variations in state law that preclude a finding of typicality. *See In re Telectronics*, 172 F.R.D. at 281. As such, this Court finds that the prospective class representatives here do not satisfy Rule 23(a)(4).

## III. Rule 23(b)

■ In order to obtain class certification, Plaintiffs must also show that the controversy falls within one of Rule 23(b)'s three permissible class certification categories. Plaintiffs have moved for class certification under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [2]

### A. Predominance

■ The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Lienhart v. Dryvit*

*Sys., Inc.*, 255 F.3d 138, 146 (4th Cir.2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). In order to satisfy Rule 23(b)(3), "common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir.2001).

■ In class actions governed by the laws of several states, variations in state law will often overwhelm any common issues. *See Ward v. Dixie Nat'l. Life Ins. Co.*, 257 Fed.Appx. 620, 628–29 (4th Cir.2007), *cert. denied,* —— U.S. ——, 129 S.Ct. 82, 172 L.Ed.2d 240 (2008), *Castano v. Am. Tobacco*, 84 F.3d 734 (5th Cir.1996). Plaintiffs bear the burden of providing an "extensive analysis" of the laws of the interested jurisdictions showing that variations among the applicable state laws do not pose "insuperable obstacles" to class certification. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C.Cir. 1986); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir.2004). Plaintiffs have not carried this burden and, as such, this Court finds that common questions of law do not predominate.

Individualized issues of fact also complicate Plaintiffs' Motion for Class Certification under Rule 23(b)(3). Courts have generally found that common questions of fact do not predominate in medical products liability cases. *See In re Am. Med. Sys.*, 75 F.3d at 1074 (decertifying class of users of penile implants because "complications ... may be due to a variety of factors, including surgical error, improper use of the device, anatomical incompatibility, infection, device malfunction, or psychological problems."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.2001) (affirming denial of class certification in an action involving allegedly defective pacemakers); *Ryan v. Eli Lilly & Co.*, 84

**2.** Plaintiffs appear to have abandoned their request for class certification under Rule 23(b)(1)(A). Nevertheless, it should be noted that certification under Rule 23(b)(1)(A) is inappropriate in this case because there is no risk of establishing incompatible standards of conduct for Defendants. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (Rule 23(b)(1)(A) is designed to "take[ ] in a case where the party is obliged by law to treat the members of a class alike (a utility

acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).") The mere possibility that a party may prevail against a class member in one case and lose to another does not threaten to impose "incompatible standards of conduct" for the purposes of Rule 23(b)(1)(A). *See In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984).

F.R.D. 230 (D.S.C.1979) (denying motion to certify a class who had used synthetic estrogen during pregnancy); *In re Vioxx,* (denying motion to certify a class of patients who had used the drug Vioxx); *In re Baycol Prods. Litig.,* 218 F.R.D. 197, 203–04 (D.Minn.2003).

Plaintiffs cite *In re Telectronics Pacing Systems* in support of their contention that the Panacryl Sutures controversy is the exception to the general rule that individual issues of causation predominate in medical products liability cases. In *In re Telectronics,* the District Court for the Eastern District of Louisiana concluded that the unique nature of the alleged injury and the high rate of error identified in the defendant's studies (12–25%) undermined the possibility that contributory negligence or intervening causes could account for the plaintiffs' injuries and thus the issue of the defendant's legal responsibility predominated. 172 F.R.D. at 289.

Plaintiffs identify inflammation, sinus tract infection, suture granulomas, suture extrusion, and wound dehiscence as the signature injuries allegedly produced by Panacryl Sutures. But these post-surgical complications are not as closely identifiable with Panacryl Sutures as the injuries allegedly stemming from the pacemakers in *In re Telectronics.* A more analogous case is *Neely v. Ethicon, Inc.,* where the Eastern District of Texas denied a class certification order in a products liability action involving Vicryl Sutures, another type of surgical suture produced by Ethicon. Nos. 1:00–CV–569, 1:01–CV–37, 1:01–CV–38, 2001 WL 1090204 (E.D.Tex. Aug. 15, 2001). As the *Neely* Court noted: "it is well-documented that a post-surgical infection can be caused by a wide variety of factors other than the sutures used in Plaintiffs' surgeries, including contamination from the surgical team, from the operating room, from post-surgical care, or from patients themself." *Id.* at *10 (citing Elizabeth Norman, *For Want of Soap and Water,* N.Y. Times, May 27, 2000; Alicia J. Mangram, et al., *Guideline for Prevention of Surgical Site Infection,* 1999, 20 Infection Control and Hospital Epidemiology 247 (1999)). These individual facts would have to be weighed against the alleged defects of Panacryl Sutures in light of the normal background rate of the post-surgical complications identified by Plaintiffs. And Panacryl Sutures were used in a variety of surgical procedures which require different skills on the part of the surgeon and present different risks of post-surgical complications.

Plaintiffs' failure to warn claims will also involve individualized issues such as the nature of each plaintiff's alleged injury, the warning provided with respect to each injury, and the knowledge of each class member's surgeon with respect to the risks presented by Panacryl Sutures at the time of surgery. *See In re Vioxx,* 239 F.R.D. at 461 (citing *In re Baycol,* 218 F.R.D. at 208).

In sum, the necessity of applying the laws of several jurisdictions, in combination with the individualized factual issues here, precludes a finding that common issues predominate. As such, this Court concludes that Plaintiffs' have not met Rule 23(b)(3)'s requirement that questions of law or fact common to the members of the class predominate over questions affecting only individual members.

## B. Superiority

In *A.H. Robins,* the Fourth Circuit Court of Appeals observed that class certification was a useful tool to alleviate the burdens imposed on the courts by mass tort litigation. *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 725 (4th Cir.1989). The Fourth Circuit noted that:

When account is also taken of the toll of such cases on the court system itself, it is evident that the proper functioning of the courts and the fair and efficient administration of justice for other litigants whose right to a judicial determination are inevitably delayed inordinately by the clogging of the court system by mass tort actions tried individually and the societal costs of the endless repetition of these suits in separate trials at substantial costs to the judicial system mean that a mechanism for deciding expeditiously, efficiently and rela-

tively inexpensively these actions without the delays of individual suits is demanded. *Id.* at 726.

But the difficulties in managing the class proposed here would undermine the efficiencies that might be obtained through class certification. *See Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 604–05 (5th Cir.2006) ("the predominance of individual issues relating to the plaintiffs' claims for compensatory and punitive damages detracts from the superiority of the class action device in resolving these claims."); *Castano,* 84 F.3d at 745. And whatever benefits might be realized through class treatment, certification is inappropriate in light of Plaintiffs' failure to satisfy Rule 23(a)'s typicality and adequacy requirements and Rule 23(b)(3)'s predominance requirement.

## IV. Rule 23(c)(4) and Plaintiffs' Proposed Trial Plan

■ Rule 23(c)(4) provides that "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Plaintiffs have proposed a two part trial plan similar to the approach used by the Eastern District of Louisiana in *Turner v. Murphy Oil USA, Inc.,* 582 F.Supp.2d 797 (E.D.La.2008), in which a Phase One trial would address common issues of liability and general causation and Phase Two would consist of individual trials to determine specific causation and damages.

The Fourth Circuit recognized the utility of such an approach in *A.H. Robins,* noting that "In order to promote the use of the class device and to reduce the range of the issues, courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case and, if such separate issues predominate sufficiently (i.e. is the central issue), to certify the entire controversy ..." 880 F.2d at 740. The Third Circuit expressed a similar sentiment in *In re School Asbestos Litigation,* noting that "there may be cases in which class resolution of one issue or small group of them will so advance the litigation that they may fairly be said to predominate. Resolution of common issues need not guarantee a conclusive finding on liability, nor is it a

disqualification that damages must be assessed on an individual basis." 789 F.2d 996, 1010 (3d Cir.1986) (internal citations omitted).

■ But Rule 23(c)(4) may not be used to manufacture predominance for the purposes of Rule 23(b)(3). *See Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 n. 21 (5th Cir.1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4)."); *Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 501 n. 4 (D.Md.1998) ("Rule 23(c)(4) does not permit a federal district court to certify a class under Rule 23(b)(3) by splitting a class action to create predominance."). Plaintiffs' trial plan does not eliminate the necessity of applying the laws of several jurisdictions or the individualized inquiry into whether Panacryl Sutures caused each plaintiff's injuries. And even under Plaintiffs' proposed trial plan, the difficulty of applying the laws of several states to issues of liability and general causation would remain.

### CONCLUSION

For the above stated reasons, Plaintiff's Motion to Certify Class Action is DENIED.